**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| W.K., E.H., M.M., R.P., A.F., D.P., A.F., C.A., R.K., T.H., and K.P., Plaintiffs, | * * * | Civil Action No. 1:20-CV-05263-VMC |
| v. | * * | |
| RED ROOF INNS, INC.; et al. Defendants. | * * | |

**DEFENDANTS RED ROOF INNS, INC., FMW RRI NC, LLC, RED ROOF FRANCHISING, LLC, RRI WEST MANAGEMENT, LLC, AND RRI III, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF A.F.**

Defendants, Red Roof Inns, Inc. ("RRI"), FMW RRI NC, LLC ("FMW"), Red Roof Franchising, LLC ("RRF"), RRI West Management, LLC ("RRI West"), and RRI III, LLC ("RRI III")[1] (collectively, "Defendants[2]"), respectfully submit this Memorandum of Law in support of their Motion for Summary Judgment Against Plaintiff A.F ("Plaintiff" or "A.F.").

---

[1] A.F. does not raise any claims against RRI III, however, RRI III is named in the present lawsuit and thus is included as a moving party in the subject motion.
[2] RRI is an affiliate of the remaining Defendants. FMW held title and RRI West was the manager of the Smyrna Property until December 14, 2012. RRI III was the title holder to the Buckhead Red Roof Property, not a property where this Plaintiff alleges she was trafficked. Defendant Westmont Hospitality Group, Inc. has no relationship to the remaining Defendants or the subject properties and is filing a separate Motion for Summary Judgment.

## I. INTRODUCTION

This action involves a claim by Plaintiff A.F. against Defendants for damages arising out of violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, (Count III). Plaintiff A.F. brings this action with ten other Plaintiffs. Plaintiffs' Second Amended Complaint contains allegations of sex trafficking involving two separate Red Roof Inn locations. It is undisputed, however, that Plaintiff A.F.'s allegations pertain only to one of those locations, the Red Roof located at 2200 Corporate Plaza, Smyrna, Georgia, 30080 ("Smyrna RRI" or "Smyrna Property"). (Pls.' Sec. Am. Compl. ("SAC") ¶¶ 4, 11, 19). Further, it is undisputed that A.F.'s alleged trafficking occurred between 2010 and 2011. (*See id.* at ¶ 19).

Defendants are entitled to summary judgment on Plaintiff's claims because there is no evidence showing that Defendants either directly or indirectly participated in a venture which they knew or should have known violated the TVPRA as to Plaintiff A.F.

## II. RELEVANT FACTS

### A. <u>Plaintiff A.F.'s Alleged Sex Trafficking</u>

A.F. alleges that in 2010 and 2011 she was trafficked by a man named Lorenzo Leftenant ("Leftenant"). (A.F. Dep. 180:21–181:2). Throughout the entire period she

was allegedly trafficked, A.F. believed she and Leftenant were in a relationship. (A.F. Dep. at 207:13-18). A.F. met Leftenant when she was around 15 years old, and the two began dating shortly thereafter. (A.F. Dep. at 167:17-25). A.F. and Leftenant broke up a couple months later after a physical altercation occurred wherein Leftenant pushed A.F. and tried to take her purse. (*Id.* at 171:20–172:24). A.F. admitted that at that point she knew they did not have a good relationship. (*Id.* at 172:25–173:2).

Despite their previous physical altercation, A.F. again began seeing Leftenant at some point during her senior year of high school when he informed A.F. he had some "modeling jobs" that could help A.F. pay for her tuition and living expenses while she attended college. (*Id.* at 168:1-8). Leftenant informed A.F. these "modeling jobs" included things like posing for "risqué photos and pictures," engaging in "webcam modeling," nude modeling, and cam girling. (*Id.* at 168:25–169:2, 174:14-17). Leftenant also informed A.F. she could engage in sexual activity with people in exchange for money if she wanted. (*Id.* at 169:7-13).

A.F. was allegedly trafficked at 10 to 15 hotels during 2010 and 2011 including InTown Suites Buckhead, J.W. Marriott Buckhead, a La Quinta Inn. (*Id.* at 95:16–96:15, 219:21-23). In addition to Georgia, A.F. claims her trafficking occurred in South Carolina, Washington D.C., and Barbados. (*Id.* at 200:12-21;

181:3-17). During her alleged period of trafficking, A.F. was able to leave Leftenant on multiple occasions, during which she independently and voluntarily prostituted herself approximately 20 times. (A.F. Dep. at 181:3-11). Moreover, during her alleged sex trafficking period, A.F. believed that she was a sex worker. (*Id.* at 194:5-6). It was not until late November of 2011, once she had left Leftenant, that A.F. began to consider herself a sex trafficking victim. (*Id.* at 194:7-25).

### B. Plaintiff A.F.'s Alleged Sex Trafficking at the Smyrna RRI

A.F. alleges in 2010 and 2011 she was sex trafficked at the Smyrna RRI by Leftenant. (A.F. Dep. 180:21–181:2). She alleges she was trafficked out of this hotel about five times for durations between a few days to a week. (*Id.* at 236:19-237:21). A.F. testified that she would interact with the front desk staff and housekeepers at the hotel. She would ask for extra towels or sheets. She would also ask for help if there was an internet connectivity issue. (*Id.* at 38-40).

What A.F. never did, however, is tell any of the RRI Smyrna employees she was being held against her will. (*Id.* at 247:4-6). She believes these employees should have known she was not there voluntarily as her pimp was older than her, she was dressed to "catch dates," and she would ask for the internet but didn't look like a "business" person. (A.F. Dep. at 247:7-248:3).

## III. ARGUMENT AND CITATION TO AUTHORITY

### A. The Summary Judgment Standard.

Federal Rule of Civil Procedure 56(c) allows for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine dispute as to any material fact. *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). However, once the moving party has met this burden, the burden shifts to the nonmovant who must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) ("[W]here the record taken as a whole cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.").

Here, Plaintiff A.F. has no evidence that: (1) supports her allegations against Defendants; (2) demonstrates a genuine issue of material fact for trial; or (2) plausibly articulates a legal claim that Defendants had actual and/or constructive notice that A.F.'s alleged sex trafficking occurred at the Smyrna RRI. Accordingly, Defendants are entitled to judgment as a matter of law.

### B. Defendants are Entitled to Summary Judgment on A.F.'s TVPRA Claim for Beneficiary Liability Because A.F. Has Produced No Evidence that Defendants Knowingly Benefitted from Participation in a Sex Trafficking Venture as to Plaintiff A.F.

A.F. claims Defendants are liable under 18 U.S.C. § 1595(a) because they knowingly benefitted from participation in a venture that they knew or should have known violated § 1591(a) of the TVPRA. (SAC ¶ 460). Section 1591(a) criminalizes the sex trafficking of, or knowingly assisting, supporting, or facilitating the sex trafficking of, (1) children or (2) adults by force, fraud, or coercion. 18 U.S.C. § 1591(a). Plaintiff, however, cannot produce sufficient evidence in support of essential elements of her claim. In order to establish beneficiary liability under the TVPRA, A.F. must produce evidence Defendants:

> (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to [A.F.], and (4) [Defendants] had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to [A.F.].

*Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021).

Plaintiff A.F. cannot recover against any of the Defendants under a theory of direct beneficiary liability pursuant to the TVPRA for two reasons: (1) there is no admissible evidence Defendants participated in a venture which they knew or should have known violated the TVPRA; and (2) Defendants did not know and could not

have reasonably known Plaintiff A.F. was trafficked in violation of the TVPRA. Because Plaintiff A.F. has failed to carry her evidentiary burden, Defendants are entitled to summary judgment as to Plaintiff's TVPRA claim.

**i. *Defendants did not participate in a venture which they knew or should have known was a violation of the TVPRA.***

The Eleventh Circuit has made it clear that the alleged venture must have committed a criminal violation of the TVPRA under Section 1591(a) in order for a participant in the venture to be civilly liable under Section 1595(a). *See Doe #1*, 21 F.4th at 725 ("[Plaintiff] must plead sufficient facts to plausibly allege that the venture in which the [defendants] participated committed one of these crimes against them."). Therefore, the venture must have "knowingly" recruited or harbored (or committed some other listed act against) the plaintiff, "knowing, or . . . in reckless disregard of the fact," that force, fraud, or coercion would be used to cause the plaintiff to engage in a commercial sex act. *See* 18 U.S.C. § 1591(a).

Plaintiff A.F. claims Defendants "participated in a venture that operated the Smyrna [Property]," and this venture engaged in sex trafficking of which Defendants knew or should have known. (SAC ¶¶ 447-49). In the recent *Doe # 1* decision, the plaintiffs pointed to the fact that the defendants in the case "investigated the individual hotels, took remedial action when revenue was down, read online reviews

mentioning prostitution and crime occurring generally at the hotels, and controlled the training of managers and employees who were allegedly involved in facilitating sex trafficking at the hotels." *Doe # 1*, 21 F.4th at 727. The Eleventh Circuit deemed these allegations to be insufficient to establish the Defendants' participation in a venture that violated the TVPRA because "***observing something is not the same as participating in it***." *Id.* (emphasis added).

Similarly, Plaintiff A.F. cannot provide any evidence sufficient to show that any of the Defendants participated in a common undertaking involving risk and potential profit while they had actual or constructive knowledge they were violating the TVPRA. Plaintiff A.F. can, at most, show that the venture Defendants allegedly participated in the operation and management of the Smryna RRI and simply allowed sex trafficking to occur at the Smyrna Property. However, as courts have repeatedly recognized, this is insufficient to satisfy the requirements for imposing beneficiary liability under the TVPRA because "observing something is not the same as participating in it." *Doe # 1*, 21 F.4th at 727.[3] Thus, Defendants did not participate in any criminal ventures in violation of the TVPRA under Section 1591(a).

---

[3] *See also L.H. v. Marriott Int'l, Inc.*, 2022 U.S. Dist. LEXIS 91756, at *26 (S.D. Fla. May 20, 2022); *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1027 (D. Or. 2021) ("[T]he TVPRA does not impose an affirmative duty to police and prevent sex trafficking."); *A.D. v. Wyndham Hotels & Resorts, Inc.*, ("[A] failure

**ii. *Defendants did not know and could not have reasonably known that A.F. specifically was trafficked in violation of the TVPRA.***

To establish a claim under the TVPRA against Defendants, Plaintiff A.F. must introduce evidence Defendants had actual or constructive knowledge that the venture they allegedly participated in "violated the TVPRA as to [Plaintiff]." *Doe #1*, 21 F.4th at 276. An awareness of sex trafficking at hotels generally, or even Red Roof branded hotels specifically, is insufficient to satisfy this requirement. *See id.*

Additionally, prostitution and sex trafficking are not equivalent. Prostitution is defined as the "practice or an instance of engaging in sexual activity for money or its equivalent; commercialized sex." *Prostitution*, Black's Law Dictionary (11th ed. 2019). On the other hand, sex trafficking is defined as the "practice or an instance of recruiting, harboring, transporting, providing, or procuring a person, or inducing a person by fraud, force, or coercion, to perform a sex act for pay. . . ." *Sex Trafficking*, Black's Law Dictionary (11th ed. 2019). Thus, any reasonable definition of "sex trafficking" necessarily includes a level of involuntariness while prostitution is entirely voluntary and it is not a violation of the TVPRA.

---

to affirmatively prevent or inhibit sex trafficking does not constitute participation."); *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 182 (E.D. Pa. 2020) ("We do not read the Act as requiring hotels (and other business or professions possibly earning money from trafficking) to affirmatively stop the trafficking.").

Here, Plaintiff A.F. has failed to support her allegations that any of Defendants' employees witnessed any alleged signs of ***her*** being trafficked. At no point has A.F. produced any evidence that any of the Defendants or their employees were ever made aware of her being sex trafficked at the Smyrna RRI. In fact, A.F. admitted that at no point did she tell any employees or staff members that she was being forced to have sex while staying at the Smyrna RRI. (A.F. Dep. 247:4-6). A.F. explained that she would occasionally make a request for more towels or linens. (*Id.* at 38-40). A.F. never informed anyone that she was being sex trafficked because, at the time, she considered herself to be participating voluntarily. (*Id.* at 194:5-25). Certainly, if Plaintiff herself did not know that she was a victim, there is no way Defendants could have known. Therefore, there is no evidence to support Plaintiff's allegations that any of the Defendants had actual or constructive knowledge of a TVPRA violation—specifically, commercial sex by force, fraud, or coercion— "as to [*A.F. herself*]." *Doe #1*, 21 F.4th at 276 (emphasis added).

Similarly, none of the reviews regarding alleged prostitution at the Smyrna RRI Plaintiff A.F. relies on to support her TVPRA claim reference sex trafficking. Instead, she relies on prostitution reviews, which as discussed are not the same as

allegations of sex trafficking.[4] Thus, there is no evidence Defendants had actual or constructive knowledge (1) sex trafficking, as opposed to prostitution, was occurring on the Properties; or (2) any such sex trafficking was occurring "as to [*A.F. herself*]." *Doe #1*, 21 F.4th at 276 (emphasis added). Accordingly, Defendants are entitled to summary judgment on Plaintiff's TVPRA claim under both a theory of direct liability and indirect liability.

## IV. CONCLUSION

For all the foregoing reasons, Defendants Red Roof Inns, Inc., Red Roof Franchising, LLC, FMW RRI NC, LLC, RRI West Management, LLC, and RRI III, LLC respectfully request that this Honorable Court grant their Motion for Summary Judgment, enter judgment in their favor and against Plaintiff A.F. and award such other and further relief in their favor that the Court deems appropriate.

Respectfully submitted this 20th day of January, 2023.

---

[4] *See, e.g., J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2020 U.S. Dist. LEXIS 151213, at *31 (N.D. Cal. Aug. 20, 2020) (allegations must be sufficient to "allow courts to infer that motel or hotel employees should have known that human trafficking was occurring, as opposed to other criminal conduct, such as prostitution"); *A.B.*, 484 F. Supp. 3d at 941 ("Although the complaint suggests the hotels had some level of notice that Plaintiff engaged in commercial sex acts, the vague allegations fail to show the hotels knew or should have known that Plaintiff was engaging in commercial sex as a result of fraud, force, or coercion.").

**LEWIS BRISBOIS BISGAARD & SMITH LLP**


/s/ Adi Allushi
CHARLES K. REED
Georgia Bar No. 597597
ADI ALLUSHI
Georgia Bar No. 852810
EMMA J. FENNELLY
Georgia Bar No. 610587

LEWIS BRISBOIS BISGAARD
& SMITH LLP
Bank of America Plaza
600 Peachtree Street, NE, Suite 4700
Atlanta, Georgia 30308
(404) 348-8585
(404) 467-8845 Facsimile
Chuck.Reed@lewisbrisbois.com
Adi.Allushi@lewisbrisbois.com
Lillian.Henry@lewisbrisbois.com
Emma.Fennelly@lewisbrisbois.com


*Attorneys for Defendants Red Roof Inns, Inc., FMW RRI NC, LLC, Red Roof Franchising, LLC, RRI West Management, LLC, Westmont Hospitality Group, Inc. and RRI III, LLC*

**RULE 7.1D CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D of the United States District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court was computer-processed, double-spaced between lines, and used Times New Roman font of 14 point size.

Dated: January 20, 2023.

*/s/ Adi Allushi*
ADI ALLUSHI