IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

W.K., *et al.*,

     Plaintiffs,

        v.

RED ROOF INNS, INC., *et al.*,

     Defendants.

CIVIL ACTION FILE NO.

1:20-cv-05263-VMC

## Defendant Varahi Hotel, LLC's Brief
## in Support of its Motion to Sever

Warner S. Fox
Georgia Bar No. 272654
wfox@hpylaw.com
C. Shane Keith
Georgia Bar No. 411317
skeith@hpylaw.com
Elliott C. Ream
Georgia Bar No. 528281
eream@hpylaw.com

**HAWKINS PARNELL & YOUNG, LLP**
303 Peachtree Street, N.E.
Suite 4000
Atlanta, Georgia 30308-3243
(404) 614-7400
(855) 889-4588 (facsimile)

*Counsel for Defendant*
*Varahi Hotel, LLC*

## Table of Contents

Introduction .................................................................................................. 1

Relevant Facts ............................................................................................... 2

Argument and Authorities ............................................................................ 6

  1. Severance is appropriate and permissible. ........................................ 6

  2. Fed. R. Civ. P. 21 gives the Court great discretion to order severance in this matter. ....................................................................................... 7

  3. Plaintiffs' claims do not arise out of the same transaction or occurrence. ... 8

  4. Plaintiffs' claims do not present common issues of fact or law ................. 10

  5. Judicial economy will not be negatively impacted by severance. .............. 13

  6. Plaintiffs will not be prejudiced by a severance; but Varahi will be greatly prejudiced if one is not ordered. ...................................................... 14

  7. While some of the claims will involve similar witnesses and evidence, that one factor is not controlling over the weight of the other factors. ...... 16

  8. Sex trafficking cases are particularly suited for severance. ..................... 17

Conclusion .................................................................................................. 21

LR 7.1(D), N.D. GA. CERTIFICATE OF COMPLIANCE ................................. 22

CERTIFICATE OF SERVICE ............................................................................ 22

# Table of Authorities

## Cases

*A.D. v. Cavalier Mergersub LP*, 2022 U.S. Dist. LEXIS 169985
(M.D. Fla. Sep. 20, 2022). ...................................................................*passim*

*Atlanta Gas Light Co. v. Jennings*, 86 Ga. App. 868 (1952) ...........................................10

*Calloway v. Waste Pro USA, Inc.*, 2020 U.S. Dist. LEXIS 225091
(M.D. Fla. Sep. 29, 2020) ...........................................................................9

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir.2000) ...........................................14

*DirecTV, Inc. v. Davlantis*, 2003 U.S. Dist. LEXIS 21394
(N.D. Ill. Nov. 25, 2003) ...........................................................................9

*Doe v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021)...............................................10

*FTC v. Endo Pharm., Inc.*, 2016 U.S. Dist. LEXIS 145329 (E.D. Pa. Oct. 20, 2016)....14

*Golden Scorpio Corp. v. Steel Horse Bar & Grill*, 596 F. Supp. 2d 1282
(D. Ariz. 2009) ...........................................................................18

*Grayson v. K-Mart Corp.*, 849 F. Supp. 785 (N.D. Ga. 1994) ...........................................8

*Henderson v. AT&T Corp.*, 918 F. Supp. 1059 (S.D. Tex. 1996)....................................8

*In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353
(U.S. Jud. Pan. Mult. Lit. 2020) ...........................................................15, 18

*Interscope Records v. Does 1-25*, 2004 U.S. Dist. LEXIS 27782
(M.D. Fla. Apr. 1, 2004) ...........................................................................9

*J.C. v. I Shri Khodiyar, LLC*, 2022 U.S. Dist. LEXIS 176712
(N.D. Ga. Aug. 29, 2022) ...........................................................................10

*Lurch v. Doe*, 2022 U.S. Dist. LEXIS 89880 (S.D.N.Y. May 16, 2022)........................16

*Martinez v. Safeway Stores, Inc.*, 66 F.R.D. 446 (N.D. Cal. 1975) ..................................8

*McCullough v. City of Montgomery*, 2021 U.S. Dist. LEXIS 96861
(M.D. Ala. May 21, 2021) ...........................................................................16

*Moorhouse v. Boeing Co.*, 501 F. Supp. 390, 392 (E.D. Pa. 1980) ..................................8

*New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065 (2d Cir. 1988) ..............................7

*Phillips v. Roane County (In re Zyprexa Prods. Liab. Litigation)*,
2004 U.S. Dist. LEXIS 24541 (E.D.N.Y. Dec. 3, 2004) ................................7

*Potts v. B & R, LLC*, 2014 U.S. Dist. LEXIS 54975 (M.D. Fla. Apr. 21, 2014).............7

*Republic Health Corp. v. Lifemark Hosps. of Fla.*, 755 F.2d 1453
(11th Cir. 1985) ...................................................................................18

*Ricard v. Hill,*. 1:19-cv-01881-CL, 2020 U.S. Dist. LEXIS 60065
(D. Or. Feb. 14, 2020) ...........................................................................9

*S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251 (M.D. Fla. 2020)...........................17, 21

*Secs. & Exch. Comm'n v. Martin*, 2018 U.S. Dist. LEXIS 236481
(M.D. Fla. Feb. 15, 2018)........................................................................8

*Serena Fleites & Jane Does No 1 Through No 33 v. Mindgeek S.A.R.L.*,
2022 U.S. Dist. LEXIS 82482 (C.D. Cal. Feb. 10, 2022) .......................................9, 12

*Smith v. North American Rockwell Corp.*, 50 F.R.D. 515 (N.D. Okla. 1970) ................8

*Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d 1315 (M.D. Fla. 2010)...............18

*Tex. Farmers Ins. Co. v. La.-Pacific Corp.*, 321 F.R.D. 561 (E.D. Tex. 2017) ...............15

*Torres v. Bank of Am., N.A.*, 2017 U.S. Dist. LEXIS 225392 (M.D. Fla. Oct. 6, 2017)..9

*United States v. Baker*, 10 F.3d 1374 (9th Cir. 1993) ....................................................13

*Vickers v. Georgia*, 567 Fed. Appx. 744 (11th Cir. 2014)..............................................7

*Weir v. Litton Bionetics, Inc.*, 1986 U.S. Dist. LEXIS 24884 (D. Md. May 26, 1986) ...8

**Statutes**

18 U.S.C. § 1591 ...............................................................................................12

18 U.S.C. § 1595 .......................................................................................1, 6, 12

O.C.G.A. § 16-6-1 ................................................................................................1

**Rules**

Fed. R. Civ. P. 20 ...................................................................................7, 12, 17

Fed. R. Civ. P. 21 ................................................................................................7

## Defendant Varahi Hotel, LLC's Brief
## in Support of its Motion to Sever

### Introduction

There are eleven Plaintiffs in this case. Originally seven of those eleven sued Varahi asserting three basic claims: TVPRA beneficiary claims (18 U.S.C. § 1595(a)), claims under the Georgia RICO statutes (O.C.G.A. §§ 16-6-1, *et seq*.), and common law negligence. As the case progressed, two of those Plaintiffs ultimately dismissed their claims against Varahi and now the claims of five Plaintiffs remain.

As the Court knows, there are six other Plaintiffs remaining and those Plaintiffs do not have claims against Varahi; instead, they have claims against some or all of the Red Roof Defendants[1] for claims either arising at the Smyrna Red Roof while it was corporately owned or against the Atlanta Red Roof. Whatever the exact breakdown may be, suffice it to say those six women do not have and have not asserted claims against Varahi.

Of the five women asserting claims against Varahi, each has a very different story to tell. Each has different evidence of their so-called trafficking; each has specific evidence of their damages, and each must prove their claims individually.

Because common issues don't predominate amongst the individual Plaintiffs and the threat of prejudice is high if they are lumped together (leaving the jury to try and separate things that can easily be separated by the Court beforehand), Varahi requests that the Court sever the claims of each Plaintiff with claims against it, so that they can tried separately.

---

[1] The term Red Roof Defendants herein means all defendants to this action other than Varahi Hotel, LLC.

If the Court will not do that, Varahi asks for a severance of the claims against Varahi from those against the other Defendants that are not related to the Smyrna Red Roof. Because of the difference between the non-Varahi Plaintiffs, Varahi requests that the Court, at the very least, sever those claims from this suit such that the only claims to be tried in the "Varahi action" are those of the five Varahi Plaintiffs arising from alleged trafficking at the Smyrna Red Roof since December 13, 2012.[2]

### Relevant Facts

Since mid-December 2012, Varahi has owned and operated the Red Roof hotel located at 2200 Corporate Plaza SE, Smyrna, GA 30080.[3, 4] Prior to that, the hotel was corporately owned by one of the Red Roof Defendants.[5]

There are eleven Plaintiffs here. Five of them – W.K., E.H., R.P., M.B., and D.P. – have asserted claims against Varahi alleging that they were victims of sex trafficking at the Smyrna Red Roof during the time Varahi owned it. Only those five of the eleven total Plaintiffs have claims against Varahi.

Of those five, two - W.K. and R.P. - also have claims against and the Red Roof Defendants for claims arising at the Atlanta Red Roof.[6] Four of the remaining six - C.A., R.K., K.P., T.H. - only have claims arising from alleged trafficking at the Atlanta Red Roof, located on N. Druid Hills Road. Plaintiffs M.M. and A.F. only

---

[2] Varahi recognizes that each of the Plaintiffs with claims against it has asserted claims against some or all the Red Roof Defendants. Those claims alleging causes of action related to the Varahi-owned Smyrna Red Roof can and should be tried alongside the Varahi Plaintiffs' claims against Varahi.

[3] *See* Doc. 49, ¶ 499.

[4] Throughout the course of this litigation this property has been referred to as the Smyrna Red Roof.

[5] *See* Doc. 274-2, ¶14; 38, ¶37.

[6] Doc. 38, at ¶¶ 4, 31.

have claims against the Red Roof Defendants, and not Varahi, arising from alleged trafficking at the Smyrna Red Roof when it was still corporately owned/operated – before Varahi existed.

Thus, there are five Plaintiffs asserting claims against Varahi. And there are eight asserting claims against the "Atlanta Red Roof" Defendants. There is overlap of only two Plaintiffs.

As to the Varahi Plaintiffs,[7] unlike some with claims against the Atlanta Red Roof, there is no allegation that they were jointly trafficked or overlapped much, if at all. Indeed, there is no allegation by the five Varahi Plaintiffs that any of them shared a common trafficker.[8] Additionally, while some of their time periods of alleged trafficking overlap, there is no evidence that any of these Plaintiffs knew each other.

---

[7] The term "Varahi Plaintiffs" means Plaintiffs W.K., E.H., R.P., M.B., and D.P collectively.

[8] The alleged traffickers identified were:

| Plain-tiff | Alleged Traffickers | Citation |
|---|---|---|
| W.K. | Aldonte Armstead (a/k/a "Chino") and a man identified as "Red." | W.K.'s Responses to Varahi's First Interrogatories, No. 2; No. 12. |
| E.H. | Monterrious Terrell McCoy | E.H. Depo., pp. 13:10–14:4 |
| R.P. | LaBryan Wilkerson (a/k/a "AK", Curtis George, Spencer Collins, "Cap," and eight different "pimps" at one time in Norcross. | R.P. Depo., pp. 39:24–41:2, p. 51:3-20, pp. 219:14–220:8; Exhibit 2, pp. 7, 10. |
| M.B. | Daundra Gremillion (a/k/a "Drae"), a man identified as "Bless," and a man identified as "Red." | M.B. Depo., p. 26:9-15, p. 86:22-25, p. 87:1-14. |
| D.P. | Roy Leonard Williams (a/k/a "Trap") and Shaun Spates. | D.P. Depo., p. 16:16-19, p. 30:15-23, pp. 49:25–50:8, pp. 98:21–99:13 |

While there is one common name within the bunch of twenty men identified, there is no evidence that the two "Reds" are the same person. M.B. denied knowing W.K. and their alleged periods of trafficking were far apart.

Each Plaintiff tells an entirely different story of their time at the Smyrna Red Roof. Several concede that they kept their heads down, tried to remain discrete, did not flaunt or try to bring attention to themselves, and did not interact with the hotel staff. While one, W.K., alleges that she was choked in the middle of the night in front of an Indian man she thinks works there. In all, the allegations and stories recounted by the Varahi Plaintiffs of their individual "trafficking" are entirely different, turn on different facts, and simply are not the same.[9]

And that is nothing compared to the difference between the Varahi Plaintiffs and the remaining ones with claims against the Atlanta Red Roof. For example, most of the other plaintiffs know each other and knew each other during their periods of alleged trafficking. Plaintiff R.K. testified she knows C.A., T.H. and K.P.[10] Plaintiffs T.H. and R.K. know each other very well.[11] C.A. knows K.P. and R.K.[12] K.P. testified she knows C.A. and R.K.[13] Contrast that with the fact that none of the Varahi Plaintiffs know each other. Furthermore, while none of the Varahi Plaintiffs had an alleged trafficker in common, Plaintiffs R.K., T.H. and C.A. all testified they were trafficked by Earnest Floyd Wright, III a/k/a "Bagz"[14] and

---

[9] The Varahi Plaintiffs do have some similarities. Each concedes that she was present on the property to break the law and engage in commercial sex. And none testified that they ever reached out for help from anyone at the hotel or informed anyone at the hotel that they were being trafficked or held against their will. These limited similarities are not enough to make these cases the same or to overcome the severe prejudice that would be visited upon Varahi if all their claims were tried simultaneously.

[10] R.K. Depo. 13-15, 51.

[11] T.H. Depo. 28, 111; R.K. Depo. 14,

[12] C.A. depo 20-21, 97.

[13] K.P. Depo. 15.

[14] R.K. Depo. 18-19; T.H. Depo. 18; C.A. Depo. 52-53.

Plaintiffs T.H. and R.K. were also trafficked by a man called "Bless."[15] To take matters a step further, T.H. and R.K. testified they were at times trafficked at the same time and places by the same trafficker.[16]

There is also substantial overlap between many of the witnesses to the alleged trafficking of Plaintiffs R.K., T.H., C.A., and K.P. In addition to Bagz, C.A. testified she was trafficked by Michael Beene a/k/a "Fresh" and Jerome Rutledge a/k/a "Kwan."[17] And while they were not trafficked by them directly, R.K., T.H. and K.P. all knew "Fresh" and "Kwan" and identified them as individuals associated with their own traffickers.[18] These men, and others including Martez Martell Fuque a/k/a "Diablo," "Kuuk," "Anthony," Tradelle Lacy a/k/a "Tricky," "Bless," and "Nitty" were identified by Plaintiffs R.K., T.H., C.A., and K.P. as members of or associated with a group of people who referred to themselves as P.I.V.I.P.[19] And while this collective group of alleged pimps and traffickers was involved in the alleged trafficking of Plaintiffs R.K., T.H., C.A., K.P. and others, that is not the case for any of the Varahi Plaintiffs.

Last, there is substantial overlap in the time periods of alleged trafficking by the non-Varahi Plaintiffs. Except for K.P., whose alleged on-and-off trafficking spanned from 2010 to 2016, R.K., T.H., C.A., M.M. and A.F.'s periods of trafficking in Georgia only covered 2010 to 2014, with most occurring between 2010 and 2013. As stated above, Varahi did not own or operate any hotel anywhere until

---

[15] R.K. Depo. 18-19; and T.H. Depo. 18.

[16] R.K. Depo. 204-206

[17] C.A. Depo. 51, 39.

[18] T.H. Depo. 130-131; K.P. Depo. 28-29; R.K. Depo. 20-21, 32-33.

[19] K.P. Depo. 73-77, 314; R.K. Depo. 223-224; C.A. 28-29, 39.

December 2012 and the Varahi Plaintiffs' claimed timeframes span mostly from 2014 onward.

As the Court can see, the claims of each Plaintiff are different. But more importantly, the claims of the Plaintiffs suing the Atlanta Red Roof are starkly and remarkably different from those suing the Smyrna Red Roof.

<b>Argument and Authorities</b>

**1.  *Severance is appropriate and permissible.***

Each Plaintiff seeks recovery under the Trafficking Victims Protection Reauthorization Act (TVPRA), which allows her to sue her traffickers, the people that victimized her and made money directly off her alleged ordeal. But she's not suing her traffickers—not any of them.[20] Instead, each Plaintiff is proceeding under the TVPRA's beneficiary provision, which allows suit against anyone who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). Plaintiffs have also asserted claims under the Georgia RICO statutes, which they will undoubtedly claim provides the basis for denial of this motion, and common law negligence claims.

---

[20] This, despite alleging that "[a]s a result of the control, force, fraud and coercion exerted over Plaintiffs W.K., E.H., M.M., R.P., M.B., D.P., A.F., C.A., R.K., K.P., and T.H. by *their traffickers*, Plaintiffs were incapable of managing the ordinary affairs of life until they escaped captivity or the control of *their traffickers*". Doc. 38, at ¶ 12 (p. 4) (emphasis supplied).

### 2. *Fed. R. Civ. P. 21 gives the Court great discretion to order severance in this matter.*

The Federal Rules grant district courts "broad discretion" to sever claims as the need arises. *Potts v. B & R, LLC*, 2014 U.S. Dist. LEXIS 54975, at *7 (M.D. Fla. Apr. 21, 2014). Under Rule 21, courts may "sever any claim against any party." Fed. R. Civ. P. 21. Severance of claims is "committed to the sound discretion of the trial court." *Phillips v. Roane County (In re Zyprexa Prods. Liab. Litigation)*, 2004 U.S. Dist. LEXIS 24541, *6 (E.D.N.Y. Dec. 3, 2004) (*citing New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988)). *See also Vickers v. Georgia*, 567 Fed. Appx. 744 (11th Cir. 2014).

"In considering whether to sever claims in a civil suit, courts look to the following factors: (1) whether the claims arise out of the same transaction or occurrence;[21] (2) whether the claims present common questions of fact or law; (3) whether severance would serve judicial economy; (4) prejudice to the parties caused by severance; and (5) whether the claims involve different witnesses and evidence." *Phillips*, 2004 U.S. Dist. LEXIS 24541, *6 (citations omitted). Once claims have been severed, they "become entirely independent actions to be tried, and judgment entered thereon, independently." *Id.*, at *6-7 (citation omitted). *See also Whitest v. Crisp County*, 2020 U.S. Dist. LEXIS 260462, *7 (M.D. Ga. Aug. 19, 2020)

---

[21] It is important to note as the Court looks to this factor, Rule 20, the permissive joinder Rule, uses the same language ("same transaction or occurrence") as that set forth by the courts as a factor for consideration in the Rule 21 severance analysis. Because of the use of the same language and the consistent application of the same standards across the two Rules, Varahi, at times, refers to Rule 20 cases in this Rule 21 motion.

(*citing Secs. & Exch. Comm'n v. Martin*, 2018 U.S. Dist. LEXIS 236481 (M.D. Fla. Feb. 15, 2018).[22] Turning to the factors, it is clear that severance is warranted here.

### 3.  *Plaintiffs' claims do not arise out of the same transaction or occurrence.*

Whether looking at all eleven Plaintiffs or only the five Varahi ones, it is clear the Plaintiffs' claims do not arise from out of the same transaction or occurrence. As noted above, the five Varahi Plaintiffs do not share any common traffickers, their experiences were different and while there's some overlap, the Plaintiffs were not all at the hotel at the same time.

The best Plaintiffs can say is that they're all alleging they were trafficked at the two hotels (in the case of the eleven) or just at the Smyrna Red Roof (in the case of the five). But such a broad categorization of alleged action does not make them arise out of the same transaction or occurrence. "Simply alleging a similar statutory violation is not enough to satisfy the same transaction or occurrence

---

[22] Cases in which severance or refusal to join have been has been ordered include: *Henderson v. AT&T Corp.*, 918 F. Supp. 1059, 1063 (S.D. Tex. 1996) (severing plaintiffs because "even assuming there is a pattern or practice of discrimination [by the defendant] it is clear that the Plaintiffs' claims in fact are highly individualized, involving particularized questions about each Plaintiff's work history and job performance"); *Martinez v. Safeway Stores, Inc.*, 66 F.R.D. 446, 449 (N.D. Cal. 1975) (granting severance because "there is no showing that [one plaintiff's] claims are sufficiently analogous to the original plaintiffs to say that his right to relief arises from the same series of transactions as their rights do."); *Moorhouse v. Boeing Co.*, 501 F. Supp. 390, 392 (E.D. Pa. 1980) (affirming severance of plaintiffs who alleged a pattern of discriminatory practices because "there were . . . substantial enough factual distinctions surrounding each plaintiff's lay off which made it impractical to try all the cases to the same jury."); *Smith v. North American Rockwell Corp.*, 50 F.R.D. 515, 522-23 (N.D. Okla. 1970) (granting motion to sever where alleged denial of promotions were made by different supervisors in different work places and for different types of work); *Weir v. Litton Bionetics, Inc.*, 1986 U.S. Dist. LEXIS 24884 (D. Md. May 26, 1986) (granting motion to sever because the terminations occurred on different dates, occurred in different company divisions and the terminations were made by different decision makers; trying the claims together would be prejudicial to defendant and confuse the jury). *See also Grayson v. K-Mart Corp.*, 849 F. Supp. 785, 791 (N.D. Ga. 1994) (rejecting plaintiffs' arguments that the higher cost of separate trials and the loss of cumulative impact of separate trials were sufficient to merit joinder).

requirement." *DirecTV, Inc. v. Davlantis*, 2003 U.S. Dist. LEXIS 21394, at *4 (N.D. Ill. Nov. 25, 2003).

The Rules consider whether it's "the *same* transaction or occurrence not … *similar* transactions or occurrences." *Torres v. Bank of Am., N.A.*, 2017 U.S. Dist. LEXIS 225392, at *3 (M.D. Fla. Oct. 6, 2017) (citation omitted and emphasis in original); *see also Calloway v. Waste Pro USA, Inc.*, 2020 U.S. Dist. LEXIS 225091, at *9 (M.D. Fla. Sep. 29, 2020); *Ricard v. Hill*,. 1:19-cv-01881-CL, 2020 U.S. Dist. LEXIS 60065, at *5 (D. Or. Feb. 14, 2020) ("Federal Rule of Civil Procedure 20 refers to the same transaction or occurrence not to similar transactions or occurrences."); *Interscope Records v. Does 1-25*, 2004 U.S. Dist. LEXIS 27782, at *12 (M.D. Fla. Apr. 1, 2004) ("While there may be some similarities in the different scenarios presented by each plaintiff, the standard that must be applied here is same transaction or occurrence, not similar transaction or occurrence.").

This factor presents a binary question – either they're the same or not. And here, they're not the same. Plaintiff's claims do not arise from the same occurrence. Thus, this factor weighs in favor of severance.[23]

---

[23] *Compare Serena Fleites & Jane Does No 1 Through No 33 v. Mindgeek S.A.R.L.*, 2022 U.S. Dist. LEXIS 82482, at *15-16 (C.D. Cal. Feb. 10, 2022) (severing claims of individual plaintiffs against defendants, one of which owned Pornhub, and finding that despite general allegations of similarity, the claims did not arise from the same transaction or occurrence, noting "Plaintiffs' individual factual allegations vary widely. For example, the alleged occurrences of sex trafficking, child pornography, and appropriation and misuse of likeness differ substantially in where the improper conduct allegedly occurred, how it occurred, and who perpetrated the conduct. Videos of Plaintiffs were allegedly created in Florida, Arizona, California, Maryland, New York, Pennsylvania, Colombia, the United Kingdom, and other unidentified states. Plaintiffs were victimized by different individuals, such as 'a ring of Hollywood men and New York financiers, including Jeffrey Epstein'; convicted sex traffickers; 'a female pimp in Colombia'; former intimate partners of the Plaintiffs, among others. The videos that were posted to MindGeek's platforms also were posted at different time periods, with some videos made as early as 2001 and some as late as 2018.").

#### 4. *Plaintiffs' claims do not present common issues of fact or law.*

Here, each Plaintiff is different. And each Plaintiff must prove her own individual case before looking to anyone else to bolster her. As the Court knows, the TVPRA requires a particularized and individualized showing as to each Plaintiff,[24] and each Plaintiff must prove both the duty owed to her based on her status and an individual breach to support her negligence claim.[25] And while RICO may allow additional non-Plaintiff specific evidence for purposes of pattern, the law still requires a particularized factual showing of causation and intent.[26]

The difference between each Plaintiff is highlighted by the summary judgment motions. The fact that each Plaintiff's claims had to be addressed differently, specifically because of the different facts that applied to each, highlights the factual differences and shows that individualized issues predominate here.

There is nothing factually common about these claims. Whether the Court looks at them on a Plaintiff-by-Plaintiff basis or on a hotel-by-hotel basis, the fact remains that each woman is different, each story is different, each occurrence is different, and there is no factual overlap amongst them.

---

[24] *See Doe v. Red Roof Inns, Inc.*, 21 F.4th 714, 719 (11th Cir. 2021) (making clear that for elements (3) and (4) of a TVPRA claim, plaintiff must show that "the undertaking or enterprise violated the TVPRA *as to the plaintiff*") (emphasis added).

[25] *See Atlanta Gas Light Co. v. Jennings*, 86 Ga. App. 868 (1952).

[26] *See J.C. v. I Shri Khodiyar, LLC*, 2022 U.S. Dist. LEXIS 176712, at *25 (N.D. Ga. Aug. 29, 2022) (holding that to establish "the proximate cause element of a Georgia RICO claim, a plaintiff must show that her injury flowed directly from a predicate act" and a plaintiff "must show that her injury was the direct result of a predicate act targeted toward her, such that she was the intended victim" of the predicate act).

The same applies to the issue of damages. Each Plaintiff must prove her own damages. This requires an individualized showing by each Plaintiff and an individualized inquiry by the fact finder. Lumping them all together only confounds this issue and leads to the likelihood of confusion. And while Plaintiffs have tried to produce evidence of generalized damages,[27] that is not relevant here, likely is not admissible, and still does not go to the issue of actual damages, which is particular to each person.

In sum, absent broad characterizations of what they did at the hotel (break the law by engaging in commercial sex) and how they want to characterize it now (alleged trafficking), there is nothing that is factually similar about each.

Additionally, common questions of law do not predominate such that they should overcome the divergent facts, occurrences, and other issues that require particularized determinations. As noted, the TVPRA and negligence claims are looked at exclusively on a plaintiff-by-plaintiff basis. Additionally, the causation, intent and damages prongs of the RICO claims require individualized showings and determination. It is only the "pattern" portion of the RICO claims that arguably share common issues of fact. But this lone issue is not sufficient to overcome all the others.

---

[27] Varahi has filed a Motion to Exclude the testimony of Melanie Bliss, Ph.D., the witness Plaintiffs have offered to opine on general damages, but who cannot offer any specific to each Plaintiff and who cannot provide any testimony that her generalized damages are more likely than not to be experienced by any particular Plaintiff.

Moreover, the existence of a RICO claim is not a basis in and of itself to disallow severance. Instead, the Court must look to the particulars of each Plaintiff's claims. As one court has noted in a similar context when faced with the argument that a RICO claim saves trafficking claims like this from severance:

> Nor does alleging RICO claims against the Defendants show that there are common questions of law and fact here. To assert a RICO claim, each Plaintiff must have standing. That is, each Plaintiff is required to show that (1) her alleged harm qualifies as injury to [her]; and (2) that [her] harm was 'by reason of' the RICO violation. Again, this requires Plaintiffs to show that the pattern and practice complained of caused their specific injuries—an individualized inquiry. Plaintiffs' claims for violation of federal sex trafficking laws (18 U.S.C. §§ 1591(a)(1), 1591(a)(2), 1595) fare no better. At a minimum, each Plaintiff will have to show that they were trafficked within the meaning of the sex trafficking statute, again a fact-specific and plaintiff-specific inquiry. Simply put, it is not enough that Plaintiffs merely allege that Defendants violated the same laws in comparable ways. Rule 20(a) requires more.

*Serena Fleites & Jane Does No 1 Through No 33 v. Mindgeek S.A.R.L.*, 2022 U.S. Dist. LEXIS 82482, at *25-26 (C.D. Cal. Feb. 10, 2022).

The same applies here, simply because there is a RICO allegation does not automatically save this case from severance. Instead, the Court must examine the issues and, as noted by the *Serena Fleites* court, individual issues still predominate here.

### 5. *Judicial economy will not be negatively impacted by severance.*

Admittedly, if the case is severed, there will be more than one trial. That is, from Varahi's vantage point, the only consideration here. And that is a consideration in every case where severance is requested. Thus, this cannot be the deciding the factor, as there would never be a severance granted.

Moreover, it is not always the case that separate trials are deemed to be a burden on the courts or the jurors. Indeed, in cases of extreme length, like an eleven-Plaintiff case here would be, severance has actually been found to serve the interest of judicial economy. *See United States v. Baker*, 10 F.3d 1374, 1389 (9th Cir. 1993) (in a case involving 24 initial defendants in a 44-count indictment covering an 11 year period of criminal activity which ultimately culminated in a 16 month trial, the court stated "Where trials of this magnitude are involved, judicial economy will often be better served by severance").[28]

These are individual Plaintiffs making individual claims, seeking highly individualized damages. That there may be some overlap does not mean that separate trials are not warranted. Here they are certainly warranted, and this factor alone should not decide the issue. "The fact-specific nature of the claims and defenses that have been or will be raised by the parties, precludes any conclusion that

---

[28] In *Baker*, the Ninth Circuit explained the benefits of separate trials in lieu of one mega-trial (like that proposed here): (1) as the counsel proceed through separate trials, their presentation becomes sharper and more streamlined so that later trials move more quickly; and (2) the Court becomes more familiar with the case and the evidence, allowing more expeditious and efficient rulings. *Baker*, 10 F.3d at 1389-90. Furthermore, the Ninth Circuit opined that "[d]isclosure of the government's method and quality of proof may even benefit the prosecution by inducing additional guilty pleas from severed defendants." *Id*. at 1390. That too is a consideration in a multi-plaintiff, multi-defendant civil litigation, as the outcome of one trial may resolve or expedite all others.

judicial economy would be served by joinder." *A.D. v. Cavalier Mergersub LP*, 2022 U.S. Dist. LEXIS 169985, at *13 (M.D. Fla. Sep. 20, 2022).

### 6. *Plaintiffs will not be prejudiced by a severance; but Varahi will be greatly prejudiced if one is not ordered.*

This factor requires the Court to consider whether severance or lack thereof would prejudice either party, with the goal being "avoidance of prejudice to either party." *FTC v. Endo Pharm., Inc.*, 2016 U.S. Dist. LEXIS 145329, at *14 (E.D. Pa. Oct. 20, 2016); *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir.2000) (court may sever claims under Rule 20 if joinder would violate "fundamental fairness" or result in prejudice to either side).

Here being forced to try the eleven-Plaintiff case involving claims of women who are not suing Varahi, for things that happened at a hotel over which Varahi had no control, will only serve to confuse the jury. A confused jury is prejudicial to everyone. By not forcing Varahi to defend itself alongside the Atlanta Red Roof, the Court can reduce some of the prejudice. Thus, at the very least, Varahi requests that the Court sever this matter by hotel.

But that won't alleviate the real prejudice here, which is caused by the sheer volume of the individual claims that Varahi will be forced to defend, even though they're all asserting individual claims. A cynic might think that this is the very reason the case was sued as it was (and informal comments from counsel seem to confirm that). Nonetheless, the threat of prejudice to the defense and jury confusion is high.

For instance, each Plaintiff will have to prove that she was trafficked, and that Varahi violated the TVPRA's beneficiary provision. As everyone involved in these cases knows, that provision is anything but clear. But what we do know is that the TVPRA does require individual proof.

The same is the case for the negligence and the RICO claims. As to the latter, even though some common evidence might help establish liability, there is nothing but individualized evidence required for the damages.

Prejudice has been found when "a single defendant must defend against multiple claims, with different factual scenarios, in one trial." *Tex. Farmers Ins. Co. v. La.-Pacific Corp.*, 321 F.R.D. 561, 565 (E.D. Tex. 2017). That is the precise situation presented here. he claims here are diverse and multiple, and no reasonable jury can be expected to segregate the evidence into different claims and keep everything straight in order to render a fair verdict.

Here the jury should consider each Plaintiff individually. These are highly individualized claims, a fact that is evidenced by the Judicial Panel on Multidistrict Litigation's decision not to send these claims to an MDL proceeding. One of the major considerations of the Panel, which is equally applicable here, was that "unique issues concerning each plaintiff's sex trafficking allegations predominate in these actions." *In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353, 1356 (J.P.M.L. 2020). The Court has in its power the ability to remedy any prejudice that might be occasioned by forcing the jury to decide all these "unique issues" in one case.

There is "no prejudice … in having these unrelated claims proceed separately." *Lurch v. Doe*, 2022 U.S. Dist. LEXIS 89880, at *9 (S.D.N.Y. May 16, 2022). And Varahi requests that the Court order severance so that the inevitable prejudice that will be visited upon it can be avoided altogether.

### 7. *While some of the claims will involve similar witnesses and evidence, that one factor is not controlling over the weight of the other factors.*

As noted, the TVPRA and negligence claims are individual claims. Thus, what happened to anyone else is not relevant to the individualized inquiry required to resolve those claims. This leaves the RICO claim, which is undoubtedly the hook upon which Plaintiffs will hang their "don't sever" hat. But, as noted above, the RICO claim also requires individualized showings and it is not the panacea that Plaintiffs likely believe that it is.

Nonetheless, Varahi concedes that should the RICO claims survive as to *every*[29] Plaintiff, then there would be the possibility of duplicative presentation of evidence in the individual trials. But the presentation of that "duplicative evidence" could easily be obviated by use of non-mutual collateral estoppel if a Plaintiff prevails in the first trial. In essence, the first trial could serve as a "quasi-bellwether" one and, if the other requirements are met, the results of that might be used in later trial(s).[30]

---

[29] Of course, if any RICO claims fall, the analysis is greatly impacted and the potential for confusion and prejudice increase and allowing a case to be tried with some RICO Plaintiffs and others without those claims would be an evidentiary morass and a trial full of confusing limiting instructions. Moreover, if any Plaintiff's RICO claims do not survive summary judgment, any argument that there will be a common presentation of evidence must be greatly tempered.

[30] *See McCullough v. City of Montgomery*, 2021 U.S. Dist. LEXIS 96861, at *54 (M.D. Ala. May 21, 2021) ("Because individual questions prevail and because individual trials on liability would be necessary following the classwide trial, class certification offers few advantages. That is especially so when compared to the alternative: individual trials following this action as a quasi-bellwether. Following that approach, if

### 8. *Sex trafficking cases are particularly suited for severance.*

With respect to "sex trafficking" cases, the severance of claims or, conversely, the refusal to join multiple claims, is common. *A.D. v. Cavalier Mergersub LP*, 2022 U.S. Dist. LEXIS 169985 (M.D. Fla. Sep. 20, 2022), is an example of such circumstances. There, Plaintiff A.D. alleged she was a victim of sex trafficking from February 2012 to August 2012 at various hotels in Hillsborough, Lee, and Collier Counties in Florida. The defendants in the case were the alleged hotel franchisors, owners, operators, and/or franchisees of the properties where the trafficking occurred. One such defendant, Choice Hotels International, Inc., moved to dismiss the first amended complaint or, in the alternative, to sever the plaintiff's claims against it. The court dismissed the complaint without prejudice and granted Choice's motion to sever.

The court was not convinced that plaintiff could properly join all defendants in her complaint. *Cavalier Mergersub*, 2022 U.S. Dist. LEXIS 169985, at *10 (*citing S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1258-59 (M.D. Fla. 2020) (finding that the joinder of parties was inappropriate because it was not clear that a single plaintiff could properly join all defendants, or that all defendants could be in a single action).

Citing Rule 20(a), permitting joinder only if claims arise out of "the same transaction or occurrence, or series of transactions or occurrences", the court noted that "[i]n determining whether claims arise from the same series of transactions or occurrences, the logical relationship test is applied." *Cavalier Mergersub*, 2022 U.S.

---

the plaintiffs here prevail, later plaintiffs may be able to rely on non-mutual offensive collateral estoppel to establish some elements of their claim (e.g., knowledge, custom).").

Dist. LEXIS 169985, at *10 (*citing Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010) and *Republic Health Corp. v. Lifemark Hosps. of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985)). "Under this test, a logical relationship exists if the claims rest on the same set of facts or the facts, on which one claim rests, activate additional legal rights supporting the other claim." *Cavalier Mergersub,* 2022 U.S. Dist. LEXIS 169985 at *10-11 (citations omitted). "There is a logical relationship when 'the same operative facts serve as the basis of both claims.'" *Id.*, at *11 (citations omitted).

The court then refused to permit joinder of claims involving "different alleged sex trafficking ventures, different hotel brands, different owners and employees, different geographic locales, different witnesses, different indicia of sex trafficking, and different time periods." *Id.* (*quoting In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353, 1356 (U.S. Jud. Pan. Mult. Lit. 2020)).

The court further noted that, while plaintiff's TVPRA claim against each defendant may raise similar legal issues, "they are not logically related because they do not arise from common operative facts. Rather, the sex trafficking that occurred at each defendant hotel's property was a separate 'transaction' or 'occurrence.'" *Cavalier Mergersub,* 2022 U.S. Dist. LEXIS 169985, at *11-12 (*citing Golden Scorpio Corp. v. Steel Horse Bar & Grill*, 596 F. Supp. 2d 1282, 1285 (D. Ariz. 2009) ("A finding of a common question of law or fact does not necessarily mean that claims against the various defendants arise from a common transaction or occurrence.").

Moreover, the court found that "[e]ach defendant's knowledge of trafficking, or what they did or failed to do giving rise to a claim for relief does not overlap

between defendants." *Cavalier Mergersub*, 2022 U.S. Dist. LEXIS 169985, *12. In concluding that severance was required, the court correctly noted:

> It is inevitable that the factual circumstances giving rise to the Plaintiff's claim against each defendant will vary (*e.g.*, the different ventures, hotel owners and employees, locations, witnesses and time periods, and the knowledge of each defendant) and resolution of Plaintiff's claim against each defendant will require an individualized inquiry. When, as here, judicial economy is not served by joining claims, severance is appropriate.

*Id*. at *13.

The court ultimately determined that fairness required severing the claims of the plaintiff as to each hotel. *Id*. at *14 ("Severance will make these cases more manageable and reduce the risk of prejudice by separating each claim as to each defendant.")[31]

These are precisely the circumstances here. The Second Amended Complaint sets forth different alleged sex trafficking ventures, different hotel owners and employees, different geographic locales, different witnesses, different indicia of sex trafficking, and different time periods. Varahi respectfully submits that there is no relationship between the five Plaintiffs' claims with respect to alleged sex trafficking at the Smyrna Red Roof and the six Plaintiffs' claims against the Atlanta Red Roof defendants. Moreover, there is no commonality amongst the Varahi Plaintiffs' claims themselves. Each is a different occurrence. Each is a different time. Each involves different indicia of trafficking (or the lack thereof)

---

[31] The court also noted, "Fundamental fairness also weighs in favor of severance as the Court would otherwise have to consider all of the alleged trafficking occurring at every hotel to be the same as to each defendant." *Cavalier Mergersub*, 2022 U.S. Dist. LEXIS 169985, at *14.

The Second Amended Complaint (Doc. 38) contains 177 pages, 670 paragraphs, and 12 Causes of Action (only the first four of which involve Varahi). With respect to Varahi, the factual allegations are set forth on pages 11-48. The factual allegations with respect to the Atlanta Red Roof are set forth on pages 48-68.

As applicable to Varahi, the allegations clearly allege that the Smyrna Red Roof is a non-corporate owned hotelier, separate and apart from the Atlanta Red Roof.[32] The Smyrna Red Roof is 15 miles away from the Atlanta Red Roof.[33] The Smyrna Red Roof and the Atlanta Red Roof are not managed by the same on-site employees. The day-to-day employees of the Smyrna Red Roof are not the same as the day-to-day employees of the Atlanta Red Roof. The alleged acts of sex trafficking at the Smyrna Red Roof did not happen at the same time as the alleged sex trafficking at the Atlanta Red Roof.[34] The alleged sex trafficking did not involve the same alleged sex traffickers.[35]

In short, the sex trafficking that allegedly occurred at the Smyrna Red Roof and the Atlanta Red Roof were each a "separate 'transaction' or 'occurrence,'" *Cavalier Mergersub,* 2022 U.S. Dist. LEXIS 169985, at *11-12, such that severance is permissible and appropriate.

---

[32] Doc. 38, at ¶¶ 32-33.

[33] *Id.,* at ¶ 196.

[34] With respect to the Smyrna Red Roof, the relevant time periods for each Plaintiff are as follows: W.K (2013-2014), E.H. (2014-2018), R.P. (2012-2016), M.B. (2015-2016), and D.P. (2017). With respect to the Atlanta Red Roof, the relevant time periods for each Plaintiff are as follows: W.K. (2013-2014), R.P. (2012-2017), C.A. (2009-2014), R.K. (2009-2013), K.P. (2011-2014), T.H. (2009-2011). Doc. 38, at ¶¶ 13-14, 16-18, 20-22, 586.

[35] *See, e.g.,* n. 8, *supra.*

Anticipating that Plaintiffs will argue that, because the claims of all Plaintiffs involve common corporate management Defendants, a trial involving all defendants is warranted, such an argument is misleading and further indicates the severe prejudice such a trial would cause Varahi. Varahi is an independent third-party, franchisee. Plaintiffs must demonstrate, among other things, that the employees of Varahi had knowledge or should have known of the alleged sex trafficking. Permitting jury to impute such knowledge from evidence adduced during a trial involving the Atlanta Red Roof Defendants, including corporate management's alleged knowledge of any such occurrences at the Atlanta Red Roof and/or such knowledge of the Atlanta Red Roof employees, would clearly prejudice Varahi. Such a bleeding of the evidence cannot be cured without separate trials.[36]

## Conclusion

The Court should sever the five Plaintiffs' claims against Varahi from those of all Plaintiffs against other Defendants and these should be tried separately for the foregoing reasons.

---

[36] *See Serena Fleites*, *supra*, n. 23; *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1259 (M.D. Fla. 2020) ("The Court agrees that the current joinder of parties is inappropriate, and that the requested severance is appropriate. The Court is not convinced, however, that a single plaintiff can properly join all defendants in her own separate complaint. It may be necessary for each plaintiff to further separate defendants in additional complaints.").

Respectfully submitted this 16th day of February 2023.

**HAWKINS PARNELL & YOUNG, LLP**

303 Peachtree Street, N.E.
Suite 4000
Atlanta, Georgia 30308-3243
(404) 614-7400
(855) 889-4588 (facsimile)
wfox@hpylaw.com
skeith@hpylaw.com
eream@hpylaw.com

/s/ *C. Shane Keith*
Warner S. Fox
Georgia Bar No. 272654
C. Shane Keith
Georgia Bar No. 411317
Elliott C. Ream
Georgia Bar No. 528281

*Counsel for Defendant*
*Varahi Hotel, LLC*

---

### LR 7.1(D), N.D. GA. CERTIFICATE OF COMPLIANCE

I certify this brief was prepared with Book Antiqua 13-point font, a font and point size approved by the Court in LR 5.1C, N.D. Ga.

*/s/ C. Shane Keith*
C. Shane Keith
Georgia Bar No. 411317

---

### CERTIFICATE OF SERVICE

This is to certify that on the 16th day of February 2023, the foregoing **Defendant Varahi Hotel, LLC's Brief in Support of its Motion to Sever** was filed with the Clerk of Court using the EM/ECF system which will send e-mail notification to all counsel of record for this matter.

*/s/ C. Shane Keith*
C. Shane Keith
Georgia Bar No. 411317

---