UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| W.K., et al., | ) | Judge Victoria M. Calvert |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-05263-VMC |
| | ) | |
| | ) | |
| Red Roof Inns, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' TRIAL BRIEF ON THE APPLICATION OF JOINT AND SEVERAL LIABILITY UNDER THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT**

Defendants Red Roof Inns, Inc., FMW RRI NC, LLC, Red Roof Franchising, LLC, RRI West Management, LLC, and RRI III, LLC (RRI Defendants) file this trial brief before this Court's pretrial conference and trial arguing that joint and several liability does not apply to a damages award under Section 1595(a) of the Trafficking Victims Protection Reauthorization Act (TVPRA) in response to Plaintiffs' statement in the Supplemental Proposed Consolidation Pretrial Order (ECF No. 478) that joint and several liability applies to this claim.

**I.     INTRODUCTION**

Plaintiffs argue that damages under Section 1595(a) of the TVPRA are joint and several and are not subject to apportionment. ECF No. 478 at 11, 14. This is a misstatement of the law. The reason is straightforward: the TVPRA, and specifically

Section 1595, are silent on the issue of joint and several liability. Given this silence, state law, including O.C.G.A. 51-12-33— applies to fill in this gap under the United States Supreme Court's holding in *United States v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979) and under 42 U.S.C. 1988. And even if state law did not apply, any federal common-law rule dictates that damages should be apportioned and are not subject to joint and several liability. Put simply, under either state or federal law, damages should be apportioned, and liability is not joint under the TVPRA.

## II. LAW & ARGUMENT

### A. State law applies under controlling statutes and Supreme Court precedent given Section 1595's silence on joint and several liability.

Section 1595(a) of the TVPRA effectively created a tort cause of action for victims of sex trafficking against (1) the perpetrator and (2) defendants that participated in, and knowingly benefited from, a sex trafficking venture. 18 U.S.C. 1595(a). But the TVPRA makes no mention of joint and several liability. At most it states that a claimant may recover "damages and reasonable attorney fees." 18 U.S.C. 1595(a). And not only that, but the legislative history, and the controlling case law, is silent on this issue—shedding no light on the application of joint and several liability. Given this silence, the courts are left to establish whether state law, or the creation of a federal rule, is warranted.

Article III courts have limited jurisdiction, and it is long established that "[t]here is no federal general common law" because federal courts cannot seize the

power of the states or Congress to make substantive rules of law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Still, federal courts have the "competence" to create a federal common-law rule in limited circumstances. *U.S. v. Honeywell Int'l Inc.*, 47 F.4th 805, 815 (D.C. Cir. 2022) (citing R. Fallon, J. Manning, D. Meltzer & D. Shapiro, Hart, and Wechsler's the Federal Courts and the Federal System 661 (7th ed. 2015)). These circumstances exist only when a federal rule is necessary to protect "uniquely federal interest[s]," such as when "the application of state law would frustrate specific objectives of federal legislation." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 507 (1988) (cleaned up).

Consequently, before federal law applies, there must be a "significant conflict between some federal…interest and the use of state law" which must be "specifically shown." *Atherton v. FDIC*, 519 U.S. 213, 218 (1997) (cleaned up); (explaining that application of state law is the proper default position for federal courts). The ability to create a federal rule does not negate the "basic aspect of our federalism" that the federal government always acts "against a background of existing state law, and that federal law retains its incomplete and interstitial nature." *Honeywell Int'l Inc.*, 47 F.4th at 815 (citing Ernest A. Young, *Preemption & Federal Common Law*, 83 Notre Dame L. Rev. 1639, 1646 (2008) (cleaned up)).

Thus, even areas of unique federal interest "do not inevitably require resort to uniform federal rules." *Kimbell Foods*, 440 U.S. at 727–28. In exercising the

3

discretion to create a federal rule, federal courts must consider (1) whether the federal statute is one that, by its nature is and must be uniform in character throughout the nation; (2) whether application of state law would frustrate specific objectives of the federal statute; and (3) how much application of a federal rule would disrupt commercial relationships based on state law. *See id.* at 728–29; *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1501 (11th Cir. 1996). Applying this framework, creation of a unique federal rule is unnecessary because state law is sufficient and does not contravene or frustrate the TVPRA's purpose or objectives.

First, the TVPRA does not require a uniform body of law on joint and several liability for a civil cause of action. Section 1595 is one component of the TVPRA. The TVPRA results from congressional efforts to address human trafficking "throughout the world." *Roe v. Howard*, 917 F.3d 229, 242 (4th Cir. 2019) (citing Pub. L. 106-386 §§ 101-102, 114 Stat. 1464, 1466-69 (2000)). Thus, the TVPRA contains "numerous mutually reinforcing provisions" that have "helped transform the way governments and the private sector around the world respond to human trafficking." 149 Cong. Rec. H10284 (daily ed. Nov. 4, 2003); 151 Cong. Rec. H11574 (daily ed. Dec. 14, 2005 (statement of Rep. Smith); 154 Cong. Rec. H10902 (daily ed. Dec. 10, 2008) (statement of Rep. Smith). These congressional efforts use a multifaceted approach to combating human trafficking. These

4

approaches include, but are not limited to, expanding, and shaping criminal penalties, providing reporting standards, and protecting and compensating victims.

One method for achieving this goal was providing a civil cause of action. This came in 2008 when Congress amended Section 1595(a). Under this amendment, Congress provided a civil cause of action against financial beneficiaries who participated in a venture that they knew or should have known violated sex trafficking laws.[1] A uniform federal rule on joint and several liability is not needed, and does not further, Congress's goals. Rather, Section 1595 "sounds in tort." Tort, *Black's Law Dictionary* (9th ed. 2014) (a tort is "[a] civil wrong, other than breach of contract, for which a remedy may be obtained."). Torts are governed by state law. And because of this, states have systems in place that ensure (1) injured parties are compensated and (2) wrong or liable behavior is deterred. *See* Roland Christensen, *Behind the Curtain of Tort Reform*, 2016 B.Y.U. L. Rev. 261, 262 (2016).

The TVPRA aims to do the same: that is deter and fight trafficking while allowing victims to be compensated for their injuries. The TVPRA does not, however, mandate joint and several liability. Rather, it just states that if the elements of Section of 1595(a) are met, a trafficking victim is entitled to "damages." Nothing

---

[1] Prior to 2008, this cause of action did not exist. Before that, the TVPRA included only criminal prohibitions along with "a civil right of action by victims of trafficking against their traffickers." *Id.*

about the application of state law stifles this plain language or intent. Quite the contrary, state law provides a consistent and predictable avenue to fill in the interstitial gaps Congress left open.

Second, although there is variation among states on the issue of joint and several liability, this variation will not frustrate the TVPRA's purpose of fighting human trafficking and protecting victims. *See* Restatement (Third) of Torts: Apportionment Liab. § 17 cmt. a, Reporters' Note, (2000) (noting "the clear trend" in the 1980s and 1990s has been to "move away from pure joint and several liability."). Rather, as discussed, the TVPRA is an extensive legislative initiative. Its purpose is to fight and combat human trafficking. Providing a civil cause of action to victims is one means for achieving this end. Using state law to fill in any gap regarding joint and several liability to alleged victims does not frustrate this purpose. It does not dampen its ability to deter. Rather, state laws provide complete legal remedies to ensure just compensation.

In sum, the *Kimbell Foods* factors weigh against crafting a unique federal common-law rule. Rather, courts should apply the applicable state-law rule to determine joint and several liability. Here, that applicable rule is Georgia's O.C.G.A. 51-12-33. This statute should govern all claims at trial.

**B.      Section 1988 also makes clear that state law applies to the TVPRA.**

Even if the *Kimbell Foods* factors did not lead to the application of state law (they do), Section 1988(a) provides a separate avenue dictating state law applies. Section 1988(a) states that when a court has jurisdiction based on the provisions of "titles 13, 24, and 70 of the Revised Statutes" that federal courts must apply state common law, as modified by state statutes, to fill in any gaps:

> The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State where the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the case, and if it is of a criminal nature, in the infliction of punishment on the party found guilty.

42 U.S.C. 1988(a).

Section 1988 applies here. The reason is simple. Section 1595 provides a civil cause of action for individuals who were a victim of a violation of the TVPRA. The TVPRA is part of Chapter 77 of Section 18 of the United States Code. Chapter 77 includes crimes that result from "Peonage, Slavery, and Trafficking in Persons." Section 18 was formerly title 70 of the Revised Statutes. *See Kettner v. Compass*

*Grp. USA, Inc.*, 570 F. Supp. 2d 1121, 1127 (D. Minn. 2008). Title 70 is specifically enumerated by and included in Section 1988.

The TVPRA also aims to combat trafficking and modern slavery. *See* 146 Cong. Rec. 22,044 (2000) (Sen. Brownback) (TVPA was Congress' first complete legislation to address the growing practice of international trafficking, "one of the largest manifestations of modern-day slavery."). This stems from principles protected by the Thirteenth Amendment. The Thirteenth Amendment is a reconstruction era civil rights amendment, which is covered by Section 1988.[2] Thus, the TVPRA addresses "civil rights."

So based on its plain language, Section 1988 applies to civil actions brought under Section 1595. And under Section 1988, when federal law is lacking or deficient, state law applies if it "is not inconsistent with" federal law. *See Moore v.*

---

[2] The Thirteenth Amendment, provides: "Neither slavery nor involuntary servitude, except as a punishment for a crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." Section 2, the Enabling Clause of the Amendment, states: "Congress shall have power to enforce this article by appropriate legislation." According to the Supreme Court, this "clause clothed 'Congress with power to pass *all laws necessary and proper for abolishing all badges and incidents of slavery in the United States.*'" *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 439 (1968) (quoting *Civil Rights Cases*, 109 U.S. 3, 20 (1883)) (emphasis in original). "Congress has the power under the Thirteenth Amendment rationally to determine what are the badges and the incidents of slavery, and the authority to translate that determination into effective legislation." *Griffin v. Breckenridge*, 403 U.S. 88, 105 (1971) (quoting *Jones*, 392 U.S. at 440); *U.S. v. Earnest*, 536 F. Supp. 3d 688, 715–16 (S.D. Cal. 2021).

*Liberty Nat. Life Ins. Co.*, 267 F.3d 1209, 1214 (11th Cir. 2001) (applying a three-step process to determine "the rules of decision applicable to civil rights claims" brought pursuant to the Reconstruction-era Civil Rights Acts."); *Kettner*, 570 F. Supp. 2d at 1127. As explained above, state law applies under this standard because:

- The TVPRA's plain language and legislative history do not address joint and several liability leaving state law to fill in the gaps.

- State law is not inconsistent with federal law or the objectives and purpose of the TVPRA.

Given this, under Section 1988, this Court should apply state law, including O.C.G.A. 51-12-33, to any claims for damages under the TVPRA.

**C.  Application of a uniform rule would displace state law when supplemental jurisdiction, as here, provides separate causes of action.**

In addition, applying state law ensures that RRI Defendants' right to apportion damages for Plaintiffs' state-law claims (if found liable) are not displaced. Make no mistake, this is not just a TVPRA case. Rather, Plaintiffs also seek to recover under Georgia law for civil RICO and negligence. *See* ECF No. 478. There is no dispute that Georgia law applies to both the civil RICO and negligence claims. This entitles the RRI Defendants to apportion fault to other entities, including non-parties, if notice is filed more than 120-days before trial. O.C.G.A. 51-12-33. These notices were timely filed. ECF Nos. 170–181, 427–429. These entities must be placed on

9

the verdict form. To hold otherwise, would extinguish a substantive right afforded to the RRI Defendants. *See Knieper v. Wright*, No. 4:15-CV-00222-HLM, 2018 WL 11330169, at *3 (N.D. Ga. Dec. 18, 2018) (whether defendant may request a jury allocate fault to nonparties is an affirmative defense).

Still, Plaintiffs argue that joint and several liability applies only to TVPRA damages. But, unless the jury returns a verdict on the TVPRA alone, there is no such thing as "TVPRA damages." Rather, this is a multiclaim case in which Plaintiffs assert different theories of recovery from the same RRI Defendants, arising from the same conduct, that resulted in the same injury. That is, Plaintiffs allege the harm they suffered from allegedly being sex trafficked amounts to liability under the TVPRA, civil RICO, and negligence law.

Damages are not awarded separately against RRI Defendants for each cause of action. Nor could they be because that would violate a fundamental principle of our legal system. Indeed, a plaintiff is only permitted to recover once for an injury. *Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 720 F. Supp. 2d 978, 992 (N.D. Ill. 2010) ("Plaintiffs can pursue different causes of action based on the same set of facts, though they can recover only once for the injury."); *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1278 (11th Cir. 2008) (it is an "elementary principle of tort law" that a plaintiff cannot "recover multiple times for a single injury"); *Mukamal v. Bakes*, 378 F. App'x 890, 898 (11th Cir. 2010) ("A plaintiff

may only recover from a defendant once for a single claim."). Plaintiffs cannot use the TVPRA to displace RRI Defendants' right to apportionment state law claims at trial. And RRI Defendants are not aware of any authority that would allow them to do so. Rather, a uniform application of state law to all claims ensures a complete and correct application of the law to these facts. State law, and apportionment, applies.

> **D. Federal common law supports apportionment and not joint and several liability.**

Even if this Court were to decline to apply state law (it should not), the creation of a uniform federal common-law rule still does not demand joint and several liability under the TVPRA. "Federal common law refers to the development of legally binding federal rules articulated by a federal court which cannot be easily found on the face of a constitutional or statutory provision." *McGurl v. Trucking Emps. of N.J. Welfare Fund, Inc.*, 124 F.3d 471, 480 (3d Cir. 1997) (cleaned up). The need for common lawmaking "stems from the inability of legislators to anticipate every possible contingency and the impracticability of judges['] returning all unanswered questions to the legislature." *Id.* at 481. Within these limits, federal courts can apply "traditional common-law technique of decision and to draw upon all the sources of the common law." *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 472, (1942) (Jackson, J., concurring) (citing *Bd. of Comm'rs v. United States*, 308 U.S. 343, 350 (1939)).

Courts often look to the Restatement as guidance for determining common-law standards. *See Allen v. D.C.*, 969 F.3d 397, 402 (D.C. Cir. 2020) (explaining that courts assume statutes' continuity with "well established" common law principles unless the statute "speaks[s] directly to the question addressed by the common law") (cleaned up). As it relates to damages, there are two Restatements at play—the Second and the Third. The Third Restatement on damages was published in 2000. That is eight years before Section 1595(a)'s beneficiary civil cause of action existed, and three years before a civil cause of action existed at all. The Third Restatement follows the approach dictated by Section 1988 and *Kimbell Foods*. That is, it states that when the conduct of two or more independent tortfeasors legally cause an indivisible injury, state law controls to determine joint or several liability:

> If the independent tortious conduct of two or more persons is a legal cause of an indivisible injury, the law of the applicable jurisdiction determines whether those persons are jointly and severally liable, severally liable, or liable under some hybrid of joint and several and several liability.

Restatement (Third) of Torts § 17 (2000).

The Third Restatement turns to this approach because as of 2000 "there [was] currently no majority rule on this question," noting that joint and several liability "has been substantially modified in most jurisdictions" through "tort reform during the 1980s and 1990s." Restatement (Third) of Torts § 17 cmt. a (2000). Put differently, there was no majority rule or clear standard on the issue of joint and

several liability when Congress passed the TVPRA. Instead, the Restatement made clear that state law governed these issues. Restatement (Third) of Torts § 10 (2000) (listing the reasons for "leaving this matter to the law of the applicable jurisdictions").

And it was against this backdrop on joint and several liability that Congress passed Section 1595(a). *See Minerva Surgical, Inc. v. Hologic, Inc.*, 141 S. Ct. 2298, 2307 (2021) (quoting *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) ("Congress legislates against a background of common-law adjudicatory principles," and "expects those principles to apply except when a statutory purpose to the contrary is evident."); *U.S. v. Currituck Grain, Inc.*, 6 F.3d 200, 206 (4th Cir. 1993). Thus, even the Restatement makes clear that turning to state law on these issues was the overwhelming approach used.

Moreover, even without turning to state law, both the Second and Third Restatement make clear that the common-law rule is apportionment when "there is a reasonable basis for determining the contribution of each cause to a single harm." Restatement (Second) of Torts § 433A (1965); s*ee also, e.g.*, Restatement (Second) of Torts § 879 (1979) ("If the tortious conduct of each of two or more persons is a legal cause of harm that cannot be apportioned, each is subject to liability for the entire harm, irrespective of whether their conduct is concurring or consecutive."); Restatement (Third) of Torts § 26 (2000) ("Damages can be divided by causation

13

when any person or group of persons to whom the factfinder assigns a percentage of responsibility (or any tortious act of such a person) was a legal cause of less than the entire damages.").

A reasonable basis for apportionment exists when there is evidence supporting allocation based not only on the divisibility of the harm but based on degree and timing of involvement. *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 616 (2009) (district court properly apportioned damages in pollution cleanup case because it was "divisible in terms of degree case, both as to the time period in which defendants' conduct occurred, and ownership existed, and as to the estimated maximum contribution of each party's activities that released hazardous substances that caused Site contamination.") (cleaned up); Restatement (Second) of Torts § 433A cmt. a–e (Am. Law Inst. 1965).

A reasonable basis to apportion exists here. To be sure, Plaintiffs allege that different individuals allegedly trafficked them at different times and at different locations. ECF Nos. 170–181 (listing Plaintiffs alleged traffickers and other hotels and locations where Plaintiffs were also allegedly sex trafficked). Many of these traffickers, time frames, and hotels are unrelated to RRI Defendants and specifically the RRI Buckhead or RRI Smyrna. And not only do Plaintiffs allege trafficking by other independent tortfeasors, but many Plaintiffs also note that they endured other types of abuse before, during, and after their alleged trafficking that is unrelated to

14

RRI Defendants. *See* Whitmore Rep. at 15–67, ECF No. 480 (filed provisionally under seal).

Plaintiffs allege all this conduct, by all of these entities and individuals, contributed to their non-economic injuries. ECF No. 478 at 25 ("Plaintiffs will seek general non-economic damages, under the TVPRA, Georgia RICO, and Georgia negligence including recovery for their past, present, and future physical and mental harm and pain and suffering in a range of $2 million to $50 million per Plaintiff to be determined by the enlightened conscience of the jury."). Despite these allegations, a jury is capable of assessing and apportioning fault. A jury can make this determination by considering factors such as the number of visits, degree of involvement, expert testimony on the effect of the abuse, alongside other available considerations. Restatement (Third) Of Torts § 8 (2000) (noting juries should consider include (1) "the nature of the person's risk-creating conduct, including any awareness or indifference with respect to the risks created by the conduct and any intent with respect to the harm created by the conduct," and (2) "the strength of the causal connection between the person's risk-creating conduct and the harm."). There is a reasonable basis for apportionment. Thus, joint and several liability under the common law does not control.

## III. CONCLUSION

For all these reasons and those stated above, this Court should apply Georgia law, including O.C.G.A. 51-12-33, to damages under the TVPRA. Or if this Court does not apply state law, it should allow the jury to apportion fault under the application of federal common law principles.

Dated: May 15, 2024                    Respectfully submitted,

/s/ Marcella C. Ducca
Marcella C. Ducca (Ga. Bar No. 115079)
GREENBERG TRAURIG LLP
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, GA  30305
Telephone:     678.553.2100
duccam@gtlaw.com

Chelsea Mikula (pro hac vice)
Elisabeth C. Arko (pro hac vice)
Joseph A. Manno (pro hac vice)
Spencer Krebs (pro hac vice)
C. Ashley Saferight (pro hac vice)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH  44113-7213
Telephone:     216.592.5000
Facsimile:     216.592.5009
chelsea.mikula@tuckerellis.com
elisabeth.arko@tuckerellis.com
joseph.manno@tuckerellis.com
spencer.krebs@tuckerellis.com
ashley.saferight@tuckerellis.com

Sandra J. Wunderlich (pro hac vice)
TUCKER ELLIS LLP
100 South Fourth Street, Suite 600
St. Louis, MO 63102-1822
Telephone:     314.256.2550
Facsimile:     314.256.2549
sandra.wunderlich@tuckerellis.com

*Attorneys for Defendants Red Roof Inns, Inc., FMW RRI NC, LLC, Red Roof Franchising, LLC, RRI West Management, LLC, and RRI III, LLC*

## **RULE 7.1D CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D) of the United States District Court of the Northern District of Georgia, the undersigned certifies that that submission to the Court was computer-processed, double-spaced between lines, and used Times New Roman font of 14-point size.

Dated: May 15, 2024

/s/ Marcella C. Ducca
Marcella C. Ducca

*One of the Attorneys for Defendants Red Roof Inns, Inc., FMW RRI NC, LLC, Red Roof Franchising, LLC, RRI West Management, LLC, and RRI III, LLC*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on May 15, 2024, a copy of the above was filed with the United States District Court for the Northern District of Georgia and served on counsel of record through the Court's CM/ECF system.

Dated: May 15, 2024

/s/ *Marcella C. Ducca*
Marcella C. Ducca

*One of the Attorneys for Defendants Red Roof Inns, Inc., FMW RRI NC, LLC, Red Roof Franchising, LLC, RRI West Management, LLC, and RRI III, LLC*