## TUNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| W.K., E.H., M.M., R.P., M.B., D.P., A.F., C.A., R.K., K.P., and T.H., | CIVIL ACTION FILE |
| Plaintiffs, | NO. 1:20-cv-05263-VMC |
| v. | JURY TRIAL DEMANDED |
| RED ROOF INNS, INC., et al. | Pursuant to Fed. R. Civ. P. 38 |
| Defendants, | |

## RESPONSE TO DEFENDANTS' TRIAL BRIEF ON THE APPLICATION OF JOINT AND SEVERAL LIABILITY UNDER THE TVPRA

The TVPRA's silence on joint and several liability isn't an implied invitation to apportion liability; it's the opposite. In 2003, when Congress empowered sex-trafficking victims to pursue civil remedies under the TVPRA,[1] it did so against the general common law of torts.[2] The traditional damages rule for torts is joint and several liability—not apportionment.[3]

---

[1] Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, sec. 4(a), § 1595, 117 Stat. 2875, 2878 (codified at 18 U.S.C. § 1595(a)). In 2008, Congress amended § 1595 to allow sex-trafficking victims to sue those who knowingly benefit from their sex trafficking and otherwise expand the civil cause of action. *See* William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, § 221(2), 122 Stat. 5044, 5067 (codified at § 1595(a)).
[2] *E.g.*, *Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011). Unless otherwise noted, internal quotations, citations, and alterations are omitted from legal citations and emphasis is added.
[3] *See Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 163 (2003).

To abrogate that traditional rule, Congress had to speak directly to it.[4] But even Red Roof agrees that Congress said nothing about joint and several liability (the default, common-law rule) or apportionment (a special rule) in the TVPRA civil-liability statute. That silence reveals Congress intent because Congress *did* say something about apportionment in another TVPRA section, specifically allowing apportionment for restitution.[5] And Congress's intent was for TVPRA civil liability to be joint and several. Red Roof wrongly rejects this conclusion.

Whether each Red Roof entity is ultimately jointly and severally liable for a judgment isn't a question the Court can answer until there is a verdict against Red Roof on each cause of action and the jury (and the Court) has heard evidence and determined what legal theories that evidence satisfies. But the Court can make clear now that Red Roof (again) misunderstands the governing law and rule that joint and several liability is available for TVPRA claims.

## ARGUMENT AND CITATION OF AUTHORITY

### I.      Civil liability under the TVPRA is joint and several.

Congress enacted the TVPRA "to combat trafficking in persons, … to ensure just and effective punishment of traffickers, and to protect their victims."[6] The TVPRA civil-liability statute, 18 U.S.C. § 1595(a), empowers Plaintiffs to pursue

---

[4] *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991).
[5] 18 U.S.C. § 1593(b)(2).
[6] Pub. L. 106-386, § 102(a), 114 Stat. 1464, 1466.

these dual goals of compensation and punishment. And it ensures that Plaintiffs can, if they prevail, achieve these goals by making liability for TVPRA civil damages joint and several and permitting sex-trafficking victims to pursue and receive punitive damages. The conclusion that the TVPRA's provision of civil liability is joint and several follows directly from the TVPRA's statutory text and structure and reflects the general common law of torts.

In 2008, Congress drastically expanded § 1595 to allow sex-trafficking victims to sue those who knowingly benefited from their being sex trafficked.[7] "Participation in a venture," an essential part of a TVPRA beneficiary claim, means "taking part in a common undertaking or enterprise involving risk and potential profit." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021). Congress therefore knew that a beneficiary claim necessarily required others' involvement to trigger liability.[8] Yet Congress said nothing about apportionment in § 1595. Red Roof insists this silence is a tacit invitation to apportion liability, but both the federal common law and the TVPRA's structure confirm that's not the case.

---

[7] *See supra* n.1.
[8] *See K.M. v. Reva Props., LLC d/b/a Super 8*, No. 1:22-cv-3991-TWT, 2024 WL 1217420, at *2 (N.D. Ga. Mar. 21, 2024) (Thrash, J.).

**A.      Federal common law calls for joint and several liability, not apportionment.**

When Congress creates a new tort action, it does so against the backdrop of the general common law of torts.[9] And the TVPRA, like other federal statutes, was passed against the backdrop of the federal common law of torts, which demands joint and several liability, not apportionment.

As the Supreme Court reaffirmed in *Norfolk & Western Railway Co. v. Ayers*, "joint and several liability is the traditional rule."[10] It "applies when there has been a judgment against multiple defendants," and makes each defendant "liable for the entire amount of the harm; provided, however, that the plaintiff recover only once for the full amount."[11] In rejecting the defendant's effort to apportion liability under the Federal Employers' Liability Act, the Supreme Court in *Ayers* was unpersuaded by the claim—much like Red Roof's—that "the modern trend is to apportion damages between multiple tortfeasors."[12] Rather, the Court noted that some states still retain "full joint and several liability," "even more" have it in certain instances,"

---

[9] *Staub*, 562 U.S. at 417 (2011); *see also Meyer v. Holley*, 537 U.S. 280, 285 (2003) (holding that "ordinary tort-related vicarious liability rules" apply to discrimination claim under Fair Housing Act that was "in effect, a tort action").

[10] 538 U.S. at 163 (rejecting apportionment under the Federal Employers' Liability Act).

[11] *Honeycutt v. United States*, 581 U.S. 443, 447–48 (2017). To be clear, joint and several liability also applies where judgment is entered against one defendant for damages arising from a single, indivisible injury caused by the defendant and one or more nonparties. *See The Atlas*, 93 U.S. 302, 306 (1876) ("An innocent party, injured by the co-operative negligence of several persons, can sue them jointly or severally, and recover from either compensation for the injury done by all.").

[12] 538 U.S. at 164.

and most states that have moved "away from the traditional rule" have done so via "legislative enactments rather than judicial development of common-law principles."[13] In other words, new legislative developments are not expressions of the common law; they are examples of legislation *abrogating* the default rule.[14]

Further, silence about the common law does not abrogate it. For Congress "to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law."[15] To overcome Congress's "expectation that" "well established" common law apply, "a statutory purpose to the contrary" must be "evident."[16] The TVPRA exhibits no such purpose. In fact, as shown below, the TVPRA's text and the circumstances of its passage and amendment all confirm Congress intended to preserve joint and several liability.

### B.    The TVPRA's text confirms Congress intended to render civil defendants jointly and severally liable.

Next, the contrast between the TVPRA's civil beneficiary provision and the statute's other remedial measures further shows that in passing the TVPRA, Congress did not abrogate the common law of joint and several liability. As Judge Thrash has recognized, the TVPRA's restitution statute "plainly *does* allow for

---

[13] *Id.* at 164–65.

[14] *Cf. FDIC v. Loudermilk*, 305 Ga. 558, 576 (2019) ("Georgia's apportionment statute, OCGA § 51-12-33, did not abrogate Georgia's common-law rule imposing joint and several liability on persons who act in concert.").

[15] *United States v. Texas*, 507 U.S. 529, 534 (1993).

[16] *Astoria Fed. Sav. & Loan Ass'n*, 501 U.S. at 108.

apportionment."[17] That statute, 18 U.S.C. § 1593(b)(2), requires judges to order restitution to be "issued and enforced in accordance with section 3664," which, in turn, permits courts to "make each defendant liable for payment of the full amount of restitution" or to "apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant."[18]

Congress's failure to mention apportionment in § 1595 when adding beneficiary claims—even though "it was foreseeable that others would be involved in these claims"—is telling, particularly in light of its provision for apportionment in the TVPRA's restitution statute.[19] After all, "when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."[20] Thus, the omission for civil beneficiary claims is presumed to be intentional and purposeful.

Indeed, as Judge Thrash also acknowledged, it would be "surprising that Congress intended to permit apportionment without saying so"—especially "since allowing civil beneficiary defendants to apportion fault to traffickers, individuals who sexually assault victims, and other beneficiaries would drastically undermine

---

[17] *K.M.*, 2024 WL 1217420, at *2.
[18] *Id.*
[19] *Id.*
[20] *See Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 452 (2002).

the effect of the civil beneficiary provision."[21] And the notion that Congress's silence is a tacit invitation to apportion is especially improbable given Congress's willingness to amend the TVPRA. Despite amending § 1595 four times since 2003,[22] Congress has never added anything about apportionment.

Elsewhere, courts apply federal common law to speak where the TVPRA is silent. For example, while the TVPRA's civil liability provision is silent as to punitive damages for civil beneficiary claims, courts have applied the general common law of torts to fill the gaps and allowed plaintiffs to recover such damages.

The Ninth Circuit was the first circuit to consider this question, and it found that the meaning of "damages" within § 1595(a) is "ambiguous: it could refer to compensatory damages, punitive damages, nominal damages, or some combination of the three."[23] To resolve the ambiguity, the Ninth Circuit, used "common law principles" because "[t]he Supreme Court has looked to the common law to determine the remedies available under federal statutes creating causes of action sounding in tort."[24] And reasoning that punitive damages in tort actions are "awarded against a person to punish him for his outrageous conduct and to deter him and others

---

[21] *K.M.*, 2024 WL 1217420, at *2.
[22] *See* Pub. L. 110-457, Title II, § 221(2), 122 Stat. 5067 (2008); Pub. L. 114-22, Title I, § 120, 129 Stat. 247 (2015); Pub. L. 115-164, § 6, 132 Stat. 1255 (2018); Pub. L. 117-347, Title I, § 102, 136 Stat. 6200 (2023).
[23] *Ditullio v. Boehm*, 662 F.3d 1091, 1096 (9th Cir. 2011). Though *Ditullio* interpreted the TVPRA's 2003, the interim changes are immaterial to this point.
[24] *Id.* at 1097–98.

like him from similar conduct in the future," the Ninth Circuit held that "punitive damages are available under 18 U.S.C. § 1595."[25] In reaching this conclusion, the Ninth Circuit also relied on the Supreme Court's direction that, "absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute."[26]

Since *Ditullio*, the only other circuit to address the availability of punitive damages under § 1595(a) has agreed—and did so without reservation.[27] Other circuits have affirmed punitive-damages awards in TVPRA cases without questioning the availability of such damages,[28] and federal district courts around the country agree.[29]

---

[25] *Id.* at 1098.

[26] *Franklin v. Gwinnett Cnty. Public Schs.*, 503 U.S. 60, 70–71 (1992); *see also Ditullio*, 662 F.3d at 1096 (quoting same language).

[27] *Francisco v. Susano*, 525 F. App'x 828, 835 (10th Cir. 2013).

[28] *E.g.*, *Warfaa v. Ali*, 1 F.4th 289, 293, 296 (4th Cir. 2021) (affirming punitive-damages award of $100,000 under § 1595); *Roe v. Howard*, 917 F.3d 229, 238, (4th Cir. 2019) (affirming punitive-damages award of $2 million under § 1595); *accord Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 206 (5th Cir. 2017) (distinguishing the TVPRA from Iraqi law because "the TVPRA authorizes punitive damages").

[29] *E.g.*, *Moore v. Rubin*, --- F. Supp. 3d ----, 2024 WL 1191135, at *8 (E.D.N.Y. Mar. 20, 2024) ("Rubin's final argument is that the TVPA does not provide for punitive damages. Every Court of Appeals to address this issue (as well as a district court within this district) has held otherwise."); *Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1175 (D. Kan. 2018) (holding that "plaintiff deserves to recover punitive damages under the TVPRA and state human trafficking laws"); *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 26 (D.D.C. 2013) ("Where federal statutes sounding in tort are

Just as courts apply federal common law to conclude the TVPRA countenances punitive damages, this Court should apply federal common law to fill the gaps on the issue of joint and several liability.

### C. Federal courts apply joint and several liability to federal causes of action.

Under multiple federal statutes providing civil remedies like that provided in the TVPRA, silence as to apportionment has led federal courts to rule that liability is joint and several.

For example, liability under 42 U.S.C. § 1983—another federal statute creating a civil remedy compensating victims and holding wrongdoers to account—is joint and several. [30] Likewise, courts have often held that "federal law" governs "the availability of joint and several liability" under the Fair Housing Act.[31] And in an action by the Federal Trade Commission related to a fraudulent telemarketing

---

silent on the availability of punitive damage, courts look to common law principles to determine the scope of remedies. … Punitive damages are therefore available under the TVPA."); *see also Treminio v. Crowley Mar. Corp.*, 649 F. Supp. 3d 1223, 1232 (M.D. Fla. 2023) ("Indeed, '[w]hile the TVPRA is silent on the issue of indirect liability, numerous district courts have rejected the argument that the TVPRA does not permit agency liability.'" (quoting *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064–65 (D. Colo. 2021))); *J.C. v. Choice Hotels Int'l*, No. 20-cv-155, 2020 WL 3035794, at *1 (N.D. Cal. June 5, 2020) ("[T]he TVPRA is silent on the issue of indirect liability, which suggests that the federal common law of agency should apply." (citing *Meyer v. Holley*, 537 U.S. 280, 287–91 (2003)).

[30] *E.g., Finch v. City of Vernon*, 877 F.2d 1497, 1503 (11th Cir. 1989); *Goudy v. Cummings*, 922 F.3d 834, 843 (7th Cir. 2019).

[31] *Whyte v. Alston Mgmt., Inc.*, No. 10-cv-81041, 2012 WL 11789773, at *1 (S.D. Fla. Apr. 11, 2012) (collecting cases).

scheme, the Eleventh Circuit held that "joint and several liability was available."[32]

Joint and several liability can arise either from the defendant's participation in a

"common enterprise" or by providing "substantial assistance" to another person

violating the telemarketing regulations.[33] In holding that "substantial assistance"

justified joint and several liability, the Eleventh Circuit emphasized that wrong's

"resemblance to a well-established torts concept": "aiding and abetting," which "can

result in joint and several liability."[34] "In tort, the aider-abettor is liable to the injured

party for the entire harm."[35]

### D. Georgia's apportionment statute cannot overcome federal law's presumption favoring joint and several liability.

Contrary to Red Roof's insistence, § 1988(a) does not allow Georgia's

apportionment statute—which abrogated "the traditional common law rule of joint

and several liability" in some circumstances for the purposes of state law claims—

to supplant joint and several liability for federal statutory claims.[36] Section 1988

allows for the application of state law only where "the laws of the United States"

---

[32] *FTC v. WV Universal Mgmt., LLC*, 877 F.3d 1234, 1236 (11th Cir. 2017).

[33] *Id.* at 1239–40.

[34] *Id.* at 1240.

[35] *Id.* at 1240–41.

[36] There is no reason to believe that by passing The Civil Rights Act of 1866, which includes what today is 42 U.S.C. § 1988 (as amended), the Reconstruction Congress intended that statute to apply to a twenty-first century federal statute. That point is made clear in the case that Red Roof cites. *Kettner v. Compass Grp. USA, Inc.*, 570 F. Supp. 2d 1121, 1128 (D. Minn. 2008) ("As a leading commentator concludes, § 1988(a) applies only to the Reconstruction civil rights acts, not to the employment discrimination acts of the 1960s and beyond.").

[*e.g.*, federal common law] "are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses … of such civil or criminal cause," and even then, only if the application of state law "is not inconsistent with … laws of the United States."[37] In *Murphy v. City of Flagler Beach*, the Eleventh Circuit summarized this "three-step process" as follows:

> First, courts must employ federal law if it enforces the civil and criminal civil rights statutes. If no suitable federal rule exists, courts should consider, as a second step, applying state common law as modified by the constitution and statutes of the forum state. This second step is limited by a third step which allows courts to apply state law only if it is not inconsistent with the federal constitution and laws.[38]

Then-Chief Judge Land applied this process in *Wright v. Watson* to reject the argument Red Roof makes now regarding joint and several liability, albeit in the context of § 1983. Judge Land first observed that the Eleventh Circuit and the former Fifth Circuit have held that liability for § 1983 damages is joint and several.[39] Thus, there *is* a federal rule of joint and several liability that enforces the statute.

Next, Judge Land reasoned that even if there were no federal rule of joint and several liability, applying Georgia's apportionment would contravene two important policies underlying § 1983 action, namely (1) "compensation of persons injured by deprivation of federal rights" and (2) "prevention of abuses of power by those acting

---

[37] 42 U.S.C. § 1988(a).
[38] 846 F.2d 1306, 1308 (11th Cir. 1988).
[39] No. 4:15-cv-34, 2017 WL 4126981, at *2 (M.D. Ga. Sept. 18, 2017) (Land, C.J.).

under color of state law."[40] For these reasons, Judge Land held that § 1988(a) did not require the application of Georgia's apportionment statute to a § 1983 claim.

The same is true under the TVPRA. As explained above, there is a well-established body of federal common law applying joint and several liability to federal statutory torts. And as Judge Thrash noted in *K.M.*, applying the apportionment statute instead of joint and several liability would likewise undermine the TVPRA's remedial purpose.[41]

Not only that, courts applying the TVPRA have not interpreted it to allow for apportionment of a TVPRA beneficiary claim. Indeed, Red Roof identifies no examples of any court allowing apportionment of fault for a TVPRA beneficiary claim, and Plaintiffs are aware of none. "It would be surprising if civil beneficiary defendants have always been permitted to apportion their damages to nonparties but have never attempted to do so."[42] This Court should not permit Red Roof's attempt to be the first.

### E.    Under the general common law of torts, joint and several liability exists under additional grounds.

The evidence will establish several bases for finding joint and several liability under general common law. This includes common enterprise and aiding and abetting principles.[43] And in particular, the evidence will establish that Plaintiffs

---

[40] *Id.*
[41] 2024 WL 1217420, at *2.
[42] *Id.*
[43] *See, e.g.*, *FTC*, 877 F.3d at 1239–40.

suffered a single, indivisible injury due to being trafficked at the Red Roof, which also supports a joint and several judgment.

Applying general common-law principles of torts and damages, federal courts hold that single, indivisible injuries call for joint and several liability. The Seventh Circuit, for example, held that "[i]t is axiomatic that where several independent actors concurrently or consecutively produce a single, indivisible injury, each actor will be held jointly and severally liable for the entire injury. In such a case the injured party may proceed to judgment against any or all of the responsible actors in a single or in several different actions."[44] Likewise, the Supreme Court in the admiralty context has noted that "the common law" permitted "an injured party to sue a tortfeasor for the full amount of damages for an indivisible injury that the tortfeasor's negligence was a substantial factor in causing, even if the concurrent negligence of others contributed to the incident."[45] This is consistent with the Supreme Court's direction that "[w]hen two or more causes produce a single, indivisible harm," courts should "refuse[] to make an arbitrary apportionment for its own sake, and each of the causes is charged with responsibility for the entire harm."[46]

The Eleventh Circuit recently discussed the relationship between the default

---

[44] *Watts v. Laurent*, 774 F.2d 168, 179 (7th Cir. 1985) (citing Restatement (Second) of Torts, §§ 875, 879).

[45] *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 260 (1979) (citing Restatement (Second) of Torts §§ 433A, 875 (1965 and 1979) along with classic torts treatises by Thomas Cooley (1879) and William Prosser (1971)).

[46] *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 614–15 (2009).

rule of joint and several liability and the possibility of apportionment for an indivisible injury. In so doing, it held that "apportionment is appropriate only where 'there are *distinct harms*' or where 'there is a reasonable basis for determining the contribution of each *cause* to a single harm."[47] Because the harm was indivisible and there was "no reasonable basis on which to determine the relative contribution of [one defendant's] conduct to the single harm," the Eleventh Circuit affirmed the joint and several judgment.[48]

This basis for joint and several liability applies here. Red Roof's own expert witness, Dr. Matthew Norman, agrees that, "[i]n the presence of similar trauma exposure at different locations or settings, it is all but impossible to parse apart or apportion symptoms to one traumatic exposure over another."[49] In other words, according to Red Roof's expert, there is no way to apportion Plaintiffs' psychiatric injuries among various tortfeasors causing similar trauma.

Furthermore, for purposes of federal principles of joint and several liability (as opposed to Georgia principles explained below in Part II), Plaintiff need not show individual tortfeasors were working in concert or planned to inflict damage on Plaintiff. For example, a court in the Southern District of Florida found joint and

---

[47] *FTC*, 877 F.3d at 1242 (quoting Restatement (Second) of Torts § 433A(1)(a) & (b) (1965)).
[48] *Id.* at 1242, 1244.
[49] Excerpt of the Expert Witness Report of Matthew W. Norman, attached hereto as **Exhibit 1**.

several liability proper on a federal statutory claim, even where defendants were acting "perhaps independently."[50] This is because it was impossible to divide Plaintiff's *emotional* injury caused by the independent actions of others.[51] In sum, evidence that Plaintiffs' mental and emotional injuries are indivisible further supports imposition of joint and several liability.

**F.    Red Roof relies on inapplicable case law to lead this Court astray.**

Red Roof relies on a series of cases where courts declined to "create a federal common-law rule" where none previously existed, to argue this Court should not apply joint and several liability here. But applying an existing, well-established body of common law is not the same as crafting a new federal common law rule where none existed before. This situation, therefore, is unlike both *United States v. Kimbell*[52] and *United States v. Honeywell International, Inc.*,[53] in which courts tried to fashion *new* common law rules where none existed. In *Kimbell*, for example, the Supreme Court held that the district court erred when "it fashioned a new federal rule for determining which lien was first in time."[54] Meanwhile, in *Honeywell*, the D.C. Circuit endeavored to create new federal common law to answer the "question of what settlement offset rule to apply" in a False Claims Act case, because that question was "not answered by the text of the [relevant statute], the common law

---

[50] *Whyte*, 2012 WL 11789773, at *1–2.

[51] *Id.*

[52] 440 U.S. 715, 722 (1979).

[53] 47 F.4th 805, 815 (D.C. Cir. 2022).

[54] 440 U.S. at 722.

background [at the relevant time of its enactment], or existing case law."[55] Here, the TVPRA's text and the common law backdrop against which it was enacted obviate the need to create a new federal common law rule.

Red Roof is also wrong to rely on *Atherton v. F.D.I.C.*, a case asking what standard of care to apply to garden variety negligence claims against officers of a federally chartered bank.[56] The *Atherton* plaintiff brought state law claims, and the Supreme Court rejected the defendant's arguments that federal common conflicted with the state law standard of care and therefore provided a defense.[57] In other words, the Supreme Court's refusal to apply federal common law as a defense to state law claims created a federalism problem not present when applying existing common law principles to federal statutory claims, like those under the TVPRA.[58]

## II. Joint and several liability also remains for the state law claims because Georgia law makes co-conspirators jointly and severally liable for the damages they cause.

Applying the federal common law under the TVPRA—as this Court should—would not deprive Red Roof of a purported "right to apportionment [of] state law claims at trial," as Red Roof contends.[59] That's because if the jury finds for the

---

[55] 47 F.4th at 815.

[56] 519 U.S. 213, 226 (1997).

[57] *Id.* at 219 ("Consequently, we must decide whether the application of state-law standards of care to such banks would conflict with, and thereby significantly threaten, a federal policy or interest.").

[58] *E.g.*, *Ayers*, 538 U.S. at 163 (FELA); *Staub*, 562 U.S. at 417 ("[W]hen Congress creates a federal tort it adopts the background of general tort law.").

[59] Doc. 482 at 11.

Plaintiffs under the TVPRA, there would be no apportionment, even under state law, for two reasons.

*First,* under Georgia law, there is no apportionment among tortfeasors where the jury finds the defendant acted in concert with those tortfeasors. That means the same facts that will prove Plaintiffs' TVPRA, Georgia RICO, and Georgia RICO conspiracy claims will establish concerted action sufficient to entitle Plaintiffs to joint and several liability for their Georgia negligence claims, making the inconsistency Red Roof fears a non-issue.

Indeed, the Georgia Supreme Court held in *FDIC v. Loudermilk* that Georgia's apportionment statute does *not* abrogate the common law of joint and several liability when tortfeasors engage in "concerted action" or a "civil conspiracy," [60] as Red Roof has done here. Where joint tortfeasors engage in concerted action, "fault is truly indivisible as a matter of law."[61]

Applying this principle, the Georgia Court of Appeals held last year in *Hansford v. Veal* that there is no apportionment of damages on a tort claim where a conspiracy is established.[62] In *Hansford*, by virtue of his default, the defendant admitted that "he conspired with [another defendant] to commit theft by deception; that the defendants perpetuated the same pattern, scheme, and fraud against six to

---

[60] 305 Ga. at 576.
[61] *Id.*
[62] 369 Ga. App. 641, 656 (2023).

twelve other persons; and that [the plaintiff's] injury—the loss of his money—proximately resulted from the theft by deception."[63] These facts were sufficient to establish a valid Georgia RICO and common law fraud claim. And because these facts also established concerted action between the two defendants, there would be no apportionment of liability between them on any of the claims.

Similarly, if the jury finds Red Roof liable under the TVPRA, that means the jury also found both that Red Roof participated in a venture (a *common* undertaking) and that the venture violated the TVPRA's criminal provisions. Thus, a verdict under the TVPRA means a finding that Red Roof acted in concert with other tortfeasors, like Varahi Hotels, LLC, the franchisee of the Smyrna hotel. Under *Loudermilk* and *Hansford*, there is no apportionment between Red Roof and those tortfeasors for these injuries even for the state law claims.

*Second*, there is reason to doubt that the Georgia apportionment statute applies. The version of the statute at issue here, O.C.G.A. § 51-12-33(b) (2019), provides that apportionment is allowed only when "an action is brought against more than one *person*."[64] Although under O.C.G.A. § 1-3-3-(14), a person includes a "corporation," nothing in that statute or the apportionment statute suggests that a

---

[63] *Id.* at 649.

[64] The version of the statute in effect when Plaintiffs filed suit in 2020 was the 2019 version. In 2022, the General Assembly amended the statute only for "cases filed after the effective date" of the Act, which was in 2022 when the Governor signed it. 2022 Ga. Laws 876. The amendment now reads "an action is brought against one or more persons."

person also includes other entities like a limited liability company. To the contrary, in section (c) of the apportionment statute, the General Assembly distinguished between a "person" and an "entity," making clear that those definitions do not overlap. Given the longstanding rule that statutes, like Georgia's apportionment statute, which are "in derogation of the common law are construed strictly,"[65] the term "person" should not be broadly construed to include LLCs. Thus, although the trial involves five Red Roof entities, only one—Red Roof Inns, Inc.—is a "person" for purposes of § 51-12-33(b). The other four entities are limited liability companies, meaning that the apportionment statute should have no application.

## CONCLUSION

For the foregoing reasons, the Court should rule that joint and several liability is available under the TVPRA.

*[Signatures follow on the next page.]*

---

[65] *Heard v. Neighbor Newspapers, Inc.*, 259 Ga. 458, 458 (1989).

This 22nd day of May, 2024.

Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
Patrick J. McDonough
Georgia Bar No. 489855
pmcdonough@atclawfirm.com

ANDERSEN, TATE & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

_/s/ Amanda Kay Seals_____
John E. Floyd
Georgia Bar No. 266413
floyd@bmelaw.com
Manoj S. Varghese
Georgia Bar No. 734668
varghese@bmelaw.com
Tiana S. Mykkeltvedt
Georgia Bar No. 533512
mykkeltvedt@bmelaw.com
Amanda Kay Seals
Georgia Bar No. 502720
seals@bmelaw.com
Michael R. Baumrind
Georgia Bar No. 960296
baumrind@bmelaw.com
Juliana Mesa
Georgia Bar No. 585087
mesa@bmelaw.com

BONDURANT, MIXSON &
ELMORE, LLP
1201 West Peachtree Street, N.W.,
Suite 3900
Atlanta, Georgia 30309
(404) 881-4100 – Telephone
(404) 881-4111 – Facsimile

**_Attorneys for Plaintiffs_**

Signature Page

## **RULE 7.1D CERTIFICATE OF TYPE, FORMAT, AND FONT SIZE**

Pursuant to Local Rule 7.1D of the United States District Court for the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court was computer-processed, double-spaced between lines, and used Times New Roman font of 14-point size.

This 22nd day of May, 2024.

*/s/ Amanda Kay Seals*
Amanda Kay Seals
Georgia Bar No. 502720

Certificate of Compliance

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this day, I filed the foregoing **RESPONSE TO DEFENDANTS' TRIAL BRIEF ON THE APPLICATION OF JOINT AND SEVERAL LIABILITY UNDER THE TVPRA** using the Court's CM/ECF system, which will automatically email the document to all counsel of record.

This 22nd day of May, 2024.

<u>*/s/ Amanda Kay Seals*    </u>
Amanda Kay Seals
Georgia Bar No. 502720