# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| W.K., et al., | CIVIL ACTION FILE |
| Plaintiffs, | NO. 1:20-cv-05263-VMC |
| v. | JURY TRIAL DEMANDED |
| RED ROOF INNS, INC., et al. | Pursuant to Fed. R. Civ. P. 38 |
| Defendants. | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO ADMIT AND USE AT TRIAL CERTAIN EVIDENCE UNDER RULE 412

## TABLE OF CONTENTS

<u>Page</u>

ARGUMENT AND CITATION OF AUTHORITY .............................................. 3

   I.  Defendants' Rule 412 Motion is untimely and they have failed
       to show good cause for an extension........................................................... 3

  II.  Evidence Defendants seek to admit is "offered to prove that a victim
       engaged in other sexual behavior" and thus subject to Rule 412................. 8

 III. Defendants fail to meet their burden to establish that the probative value
       of other sexual conduct substantially outweighs its harm or prejudice. .....11

CONCLUSION .................................................................................................... 17

i

The Court should enforce Rule 412 and prohibit Defendants from offering any evidence of Plaintiffs' other sexual conduct unless Plaintiffs open the door. Rule 412(c) requires a timely written motion detailing the evidence the party seeks to admit and the reason for admission. Defendants didn't do that. And to excuse a late filing, Defendants must show "good cause" for the delay, which requires a showing of diligence. By Defendants' own admission, they have had their Rule 412 evidence for years. Nothing stopped them from complying with the Rule.

The Rule 412(c) procedure is not a mere technicality but a substantive protection for victims of sexual misconduct. Rule 412 applies to civil actions because "[t]he need to protect alleged victims against invasions of privacy, potential embarrassment, and unwarranted sexual stereotyping, and the wish to encourage victims to come forward when they have been sexually molested *do not disappear because the context has shifted from a criminal prosecution to a claim for damages or injunctive relief.*"[1] This is particularly true, as the Eleventh Circuit has held, when the evidence might suggest that the victim's credibility is suspect simply because she engaged in some other sexual conduct at some other time.

That's exactly what the Defendants do here, repeatedly admitting their intent to do precisely what Rule 412 forbids. Defendants expressly say Plaintiffs' other

---

[1] Advisory Committee Notes, Fed. R. Evid. 412 (emphasis added).

sexual conduct should be admitted to undermine their "credibility" and establish that, for example, an incident of commercial sex before or after trafficking is evidence that the Plaintiff was not actually subjected to "coercion" at the Red Roof Inn.

Even if the Court were to find that Defendants had "good cause" to ignore Rule 412's deadline, Defendants cannot meet their burden of proving that the evidence's "probative value" comes close to "substantially outweigh[ing]" this risk of prejudice. Despite what Defendants say, Plaintiffs' RICO and TVPRA claims do not make evidence of Plaintiffs' other sexual conduct relevant—much less substantially so. Those claims focus on the *Defendants'* pattern of racketeering and the *Defendants*' participation in a venture. Plaintiffs' conduct outside of the trafficking at issue in this case is not relevant to those claims.

Nor do damages get Defendants there. To make this argument, Defendants primarily rely on the rebuttal report of Dr. Kimberly Mehlman-Orozco to argue that other instances of prostitution outside of trafficking could be a cause of PTSD. This opinion is inadmissible both because it comes from a criminologist with no authority to opine on psychiatric disorders and because it is irrelevant, particularly if Plaintiffs do not elicit the testimony Dr. Mehlman-Orozco claims to rebut. And in any case, there is no evidence that any of the other instances of prostitution caused any harm to these Plaintiffs, nor does Dr. Mehlman-Orozco claim otherwise.

2

#5016647v1

Defendants' blanket assertion that Plaintiffs have put sexual conduct "at issue" doesn't support the admissibility of this evidence either.  That's because Rule 412 always involves cases where "the issues that are being litigated"[2] involve "sexual misconduct" and where there is evidence of "other sexual behavior."[3] And the presumption in Rule 412 is that "other sexual behavior" is inadmissible.

For these reasons, as more thoroughly explained below, this Court should deny Defendants' motion and make clear that, at this point, Defendants may introduce evidence of Plaintiffs' sexual conduct only if Plaintiffs open the door or if the conduct is truly intrinsic (*i.e.*, inextricably intertwined with) the sex trafficking at the Red Roof at the heart of this case.

## <u>ARGUMENT AND CITATION TO AUTHORITY</u>

**I.    Defendants' Rule 412 Motion is untimely and they have failed to show good cause for an extension.**

Defendants don't deny that they missed the window for filing a Rule 412 motion. As Plaintiffs explained at the pretrial conference, Rule 412(c) strictly requires that the party intending to offer evidence to prove other sexual conduct file a written motion "that specifically describes the evidence and the purpose for which it is to be offered."[4] The deadline is either 14 days before trial or some other time

---

[2] Doc. 501-1 at 7.
[3] Fed. R. Evid. 412.
[4] Fed. R. Evid. 412(c).

#5016647v1

the Court sets. Here, the Court ordered the parties to file all motions *in limine* by April 30.[5] By that point, Plaintiffs had already flagged the issue for Defendants by lodging dozens of Rule 412 objections to documents on the Defendants' exhibit list. Despite that, Defendants did not move to admit any of that evidence.[6]

Justifiably concerned about Defendants improperly using sexual conduct evidence at trial in violation of Rule 412, Plaintiffs raised the issue on their own. In response, Defendants again failed to specifically identify evidence they sought to admit. Defendants then missed the rule's default 14-day deadline, too.[7]

Rule 412(c)'s procedural requirement is more than a mere technicality; it's essential to protecting victims of sexual assault from improper "invasion of privacy,

---

[5] A Rule 412 motion is a motion *in limine* because it seeks a pretrial ruling on the admissibility of evidence. *See, e.g.*, Charles A. Wright & Arthur R. Miller, The Motion in Limine, 21 Fed. Prac. & Proc. Evid. § 5037.10 (2d ed.) (explaining that the term is "loosely translated" to mean "motion at the threshold" and that a "motion *in limine* can be used to get a ruling that evidence is admissible, though lawyers use it less frequently for admission than for exclusion").

[6] *United States v. Ray*, No. 2:12 CR 171, 2013 WL 12193662, at *2 (N.D. Ind. Aug. 23, 2013), *aff'd*, 831 F.3d 431 (7th Cir. 2016) (denying Rule 412 motion filed after the deadline for pretrial motions and the default 14-day Rule 412(c) deadline).

[7] This Court then directed the Defendants "to prepare a list by the end of the week of all the incidents you want to get into." Tr. of May 29, 2024, Pretrial Conference ("PTC Tr."), Doc. 504, 131:16–17. Defendants did that, but then on Monday, filed a list of an additional three exhibits they seek to admit under Rule 412. Doc. 508-1. This includes an 80-page exhibit that, among other things, shows multiple pictures of penises (Defx 201) and another 800-page exhibit that appears to be a compilation of photographs, some of which are of unknown women in full-frontal nudity (Defx 183). It is unclear what purpose this evidence serves, but this Court should not allow Defendants to introduce any of it.

4

potential embarrassment, and sexual stereotyping that is associated with public disclosure of intimate sexual details."[8] The procedure also gives the Court and the parties sufficient time to engage in the fact-intensive exercise of deciding whether to apply the narrow exception under Rule 412(b) to allow in otherwise inadmissible evidence. As one district court explained, "[b]y ignoring the express requirements of Rule 412(c), the defendant frustrated Rule 412's objectives and presumptively inflicted harm upon the plaintiff."[9]

Defendants argue that their flouting of the Rule's procedures cause Plaintiffs no harm, pointing to the extensive grilling Plaintiffs received about their other sexual conduct during discovery. But the Rule does not address disclosing this information behind closed doors during discovery, which is a far cry from the public airing of this evidence at trial, something Congress has decided is inherently harmful.

In any event, this Court is well within its discretion under Rule 412(c) to deny Defendants' request as it relates to "other" sexual conduct. To be sure, the Rule allows this Court to consider a late-filed motion, but only upon a finding of "good cause."[10] "To establish good cause," the Eleventh Circuit has held in other contexts,

---

[8] *Sheffield v. Hilltop Sand & Gravel Co.*, 895 F. Supp. 105, 109 (E.D. Va. 1995) (citing Advisory Committee Note to Rule 412).

[9] *Id.*; *see also United States v. Roy*, 781 F.3d 416, 420 (8th Cir. 2015) ("The limitations of Rule 412 serve an important interest—the prevention of potential embarrassment or harassment of alleged victims of sexual abuse.") (cleaned up).

[10] Fed. R. Evid. 412(c)

5

"the party seeking the extension must have been diligent."[11] That means that "the party seeking the extension must establish that the schedule could not be met despite the party's diligence."[12] To that end, the Advisory Committee note to Rule 412(c) provides: "In deciding whether to permit late filing, the court may take into account … whether the evidence is newly discovered and could not have been obtained earlier through the existence of due diligence, and whether the issue to which such evidence relates has newly arisen in the case."[13]

Defendants make no effort to satisfy the "good cause" standard under Rule 412(c). And more importantly, there is no sign of Defendants' diligence when it comes to this Rule. To the contrary, as Defendants have pointed out, the evidence they seek to admit has been in the discovery file for *years*. Defendants offer no reason they could not have filed a timely Rule 412 motion, which is reason alone to deny it.[14] Indeed, courts in this district have applied the good cause standard to

---

[11] *Romero v. Drummond Co.*, 552 F.3d 1303, 1319 (11th Cir. 2008) (construing the term "good cause" under Fed. R. Civ. P. 16(b)).
[12] *Ashmore v. Sec'y, Dep't of Transp.*, 503 F. App'x 683, 685 (11th Cir. 2013) (considering the term "good cause" under Federal Rule of Civil Procedure 16(b)(4)).
[13] Fed. R. Evid. 412(c), Advisory Committee Note.
[14] *See United States v. Ramone*, 218 F.3d 1229, 1235 (10th Cir. 2000) (affirming denial of Rule 412 motion filed after the deadline where the movant "failed to demonstrate any good cause to justify a departure from the rule").

6

dismiss a complaint and reject efforts to add new claims where the movant fails to satisfy the good cause standard.[15]

The only reason Defendants seem to offer to justify their delay is an erroneous assertion that Rule 412 doesn't apply to any of this evidence in the first place. They are wrong about that, as explained in the next Section. And in any case, a strategic decision based on a mistaken belief that Rule 412 doesn't apply to them is not "good cause" sufficient to support their belated request.[16] Nor do they contend that it is.

Defendants' "failure to comply with the time limits [under Rule 412(c)] would be sufficient grounds to uphold the district court's decision" to exclude that evidence.[17] In other words, there is little threat of reversal on appeal should the Court hold the Defendants to the Rule. Meanwhile, enforcing the Rule would substantially streamline this trial by denying Defendants the chance to clutter it with improper

---

[15] *Diversey, Inc. v. Pops Techs.*, LLC, No. 1:18-CV-04210-AT, 2019 WL 11003292, at *3 (N.D. Ga. Nov. 13, 2019) (Totenberg, J.) (holding that the "good cause" standard under Rule 16 is "a strict one" and denying a belated request to modify a scheduling order to allow a motion to amend the complaint where the movant showed no diligence); *Henry v. Premium Cap. Funding, LLC*, No. 1:12-CV-02617-RWS, 2013 WL 1490949, at *3 (N.D. Ga. Apr. 10, 2013) (Story, J.).

[16] *See U.S. ex rel. Shaw Env't, Inc. v. Gulf Ins. Co.*, 225 F.R.D. 526, 528 (E.D. Va. 2005) ("Mistake of law, misunderstanding of the rules, and inadvertence do not amount to 'good cause' under Rule 4(m)."); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

[17] *Roy*, 781 F.3d at 421 (internal quotation marks omitted).

7

Rule 412 evidence, creating dozens of mini trials relating to every scandalous sexual

encounter Defendants could mine from the discovery record. ███████████

████████████████████████████████████████████

████████████████████████████████████████. This

underscores how Defendants intend to take the jury on a detour through years of

sexual conduct to distract from the trafficking at issue in this case.

This Court does not need to entertain these diversions. Instead, this Court

should deny Defendants' motion under Rule 412(c) and exclude evidence of other

sexual conduct unless Plaintiffs open the door.[18]

## II.      Evidence Defendants seek to admit is "offered to prove that a victim engaged in other sexual behavior" and thus subject to Rule 412.

Unless Plaintiffs open the door, Defendants cannot introduce evidence that

falls within Rule 412's scope, *i.e.*, evidence "offered to prove that a victim engaged

in other sexual behavior" or "offered to prove a victim's sexual predisposition."[19]

Defendants' Rule 412 evidence falls directly within the Rule's reach.

Evidence of sexual conduct relates to "other sexual behavior" unless it

involves sexual conduct that is, in the words of the Advisory Committee, "intrinsic"

---

[18] *See United States v. Sarras*, 575 F.3d 1191, 1212 n.26 (11th Cir. 2009).

[19] Fed. R. Evid. 412(a)(1)–(2).

to the sexual conduct at issue in the case.[20] Here, such intrinsic evidence is limited to evidence that is "inextricably intertwined" with the trafficking at the Red Roof.[21]

Defendants' belated request sweeps much more broadly than that. They seek to admit evidence of sexual encounters, rapes, and other commercial sex before and after the trafficking at the Red Roof.[22] None of this evidence is intrinsic to the sex trafficking at the Red Roof and thus none of it is exempt from Defendants' Rule 412's default. At the very least, Defendants haven't made a meaningful argument that it is. That's reason alone to deny Red Roof's motion. If the Court believes any of this evidence is on the margins, it can consider it in context at trial, but Defendants offer no reason to admit this evidence now.

They also ask to admit vague catch-all categories of "childhood abuse and trauma" or "[a]ll circumstances surrounding [a Plaintiff's] involvement with her alleged traffickers, including circumstances that led to her trafficking."[23] That is

---

[20] Fed. R. Evid. 412(a)(1) and Advisory Committee Note.
[21] *United States v. Rivera*, No. 13-CR-149 KAM, 2015 WL 1886967, at *7 (E.D.N.Y. Apr. 24, 2015).
[22] *See, e.g.*, Doc. 500-2 at 6-9, regarding ███████████████████████████████████████████████████████████████ The only way later evidence could prove coercion of earlier conduct is as impermissible propensity evidence.
[23] *See, e.g.*, Doc. 500-2 at 4 (regarding D.P.); *id.* at 28 (regarding R.P.).

surely not the specific description of evidence Rule 412(c) contemplates, and on its face includes evidence not intrinsic to the sex trafficking at the Red Roof.

Nor is Defendants' evidence exempt from Rule 412 based on Defendants' claim that they aren't introducing it to prove that Plaintiffs actually engaged in other sexual conduct. In their response to Plaintiffs' motion *in limine*, Defendants admitted that evidence of "commercial sex before and after the alleged trafficking period is relevant to proving prostitution."[24] And they repeated this again at the pretrial conference, confirming that they *are* introducing this evidence to prove that the Plaintiffs in fact engaged in certain sexual conduct.

Their argument is that the Court should treat Rule 412 like "a hearsay exception,"[25] one that allows an out-of-court statement if it is offered for something other than the truth, even if the jury might naturally be inclined to infer the truth. But unlike Rule 801, Rule 412 requires a tough balancing test when evidence could be used for both an improper and proper purpose. To read Rule 412 as Defendants suggest would allow the exception to swallow the rule.

But it is worse than that. Defendants seek to use this evidence to do precisely what the Rule prohibits: to "demonstrate the [Plaintiff's] propensity to engage in prostitution" and "negate their testimony that [someone] forced them into a life of

---

[24] Doc. 474 at 15.
[25] PTC Tr. 120:1–8.

#5016647v1

prostitution."[26] We know that because that's what the Defendants keep saying. By their own account, Defendants intend to use evidence of other commercial sex outside of trafficking to undermine Plaintiff's claim that they were "under force, fraud or coercion" while at the Red Roof, to "test the veracity of the plaintiff and to question other experiences and the decisions she may or may not have made."[27] As this Court acknowledged that "exactly gets into the concerns the rule has in mind."[28] This Court should not permit Defendants to do what the Rule forbids.

### III.  Defendants fail to meet their burden to establish that the probative value of other sexual conduct substantially outweighs its harm or prejudice.

Even if the Court entertained Defendants' belated Rule 412 motion, it should deny it because Defendants fail to meet Rule 412's high standard. To overcome Rule 412's presumption of inadmissibility, Defendants must show that the evidence has probative value that "substantially outweighs" the risk of harm to the Plaintiffs or unfair prejudice.[29] In other words, it's the inverse of Rule 403. While under Rule 403, courts "look at the evidence in the light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact,"[30] the

---

[26] *United States v. Bixler*, No. 21-5194, 2022 WL 247740, at *4 (6th Cir. Jan. 27, 2022).
[27] PTC Tr. 130:3–16.
[28] *Id.* 130:17–18.
[29] Fed. R. Evid. 412(b).
[30] *United States v. Flanders*, 752 F.3d 1317, 1335 (11th Cir. 2014).

inverse is true under Rule 412: the Court should maximize its prejudicial impact and minimize its probative value. And like under Rule 403, under Rule 412, the Court should consider "the probative value of the evidence in view of the availability of other means of proof."[31]

Defendants have not met the Rule 412 standard. Their only response about harm is that Plaintiffs have already disclosed this information during discovery, but Rule 412 is concerned about harm in the "*public* disclosure of intimate sexual details."[32] And although proceeding anonymously blunts the impact of some of this harm, there is still significant harm in questioning Plaintiffs regarding details about these events at a public trial.[33] Rule 412 presumptively prohibits that.

Defendants make even less of an effort to address prejudice, mentioning the word "prejudice" just once in their filings, when quoting the Rule. And yet, much of the evidence Defendants seek to admit relates to purported "voluntary" commercial

---

[31] *United States v. Beechum*, 582 F.2d 898, 914 (5th Cir. 1978) (applying Rule 403).
[32] Rule 412, Advisory Committee Note (emphasis added).
[33] ███████████████████████████████████████████████████

12

#5016647v1

sex acts before or after the sex trafficking at the Red Roof.[34] Again, this is precisely the type of evidence Rule 412 seeks to exclude.

Meanwhile, the probative value of this kind of evidence is slim or non-existent. This Court can quickly dispense with Defendants' RICO and TVPRA justifications for admitting this evidence. Plaintiffs' RICO claim relates to Red Roof Inn's actions in keeping a place of prostitution for years at its hotels and conspiring with its franchisees to profit from it. Defendants never explain why incidents of commercial sex involving Plaintiffs outside of the trafficking period and at other locations has anything to do with the RICO claim. Defendants are free to question Plaintiffs about commercial sex taking place during the trafficking period; Plaintiffs' conduct outside of that has no bearing on that claim.

Nor does asserting an *in pari dilecto* defense give Red Roof a pass to admit this harmful and highly prejudicial evidence. "To bring the parties within the rule of the law applicable to such cases, they must *both* have been engaged *in the same illegal* transaction; it is such cases only, that the maxim … applies."[35] The guiding

---

[34] *See, e.g.*, Doc. 500-2 at 6 (regarding a victim's alleged voluntary hand jobs at a massage parlor).

[35] *Wallace v. Cannon*, 38 Ga. 199, 204–05 (1868) (emphasis in original); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310–11 (1985) (limiting *in pari dilecto* to instances where "as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility *for the violations* he seeks to redress") (emphasis added).

13

"principle is that, to deprive a party of redress because of his own illegal conduct, the illegality must have contributed to the injury."[36] Put differently: "If the negligence of the parties consists, not in the joint performance of an act, but in the performance of separate and distinct acts, although of the same character and contemporaneous and in violation of the same statute, the act of one not being the act of the other, the person injured is not debarred from a recovery, unless his own negligence was the cause of the injury."[37] Plaintiffs are seeking damages due only to the harm *Red Roof* caused. Thus, Plaintiffs' conduct outside of the "transaction[s]" occurring at the Red Roof is irrelevant to any *in pari dilecto* defense.[38]

Defendants' TVPRA argument fares no better. It is true that, under the TVPRA, the jury must consider the totality of circumstances known to the Defendants to decide whether the Defendants knew or should have known of the trafficking violations of the venture with which it participates. But Defendants never explain how *Plaintiffs'* conduct outside of the Red Roof could possibly factor into that. Instead, Defendants (again) say the quiet part out loud, claiming that this evidence is relevant to "determining whether there was coercion" at the Red Roof,

---

[36] *Hughes v. Atlanta Steel Co.*, 136 Ga. 511, 511 (1911).
[37] *Allen v. Gornto*, 100 Ga. App. 744, 751 (1959) (ellipses removed).
[38] The *in pari dilecto* defense has no application "where there is no real consent on [the plaintiff's] part to the illegal transaction, as where it is induced by fraud or the like." *Gaines v. Wolcott*, 119 Ga. App. 313, 318, *aff'd*, 225 Ga. 373 (1969). And in any case, for reasons Plaintiffs will raise later, this defense is unavailable here.

14

as Plaintiffs will testify.[39] That's exactly what the evidence *cannot* prove: "a propensity or willingness to engage in prostitution."[40]

That leaves Defendants' damages arguments, which completely miss the mark. As regards commercial sex acts outside of trafficking, Defendants rely entirely on the rebuttal report of Dr. Mehlman-Orozco, which opines that "prostitution contributes to PTSD."[41] This opinion is clearly inadmissible. Dr. Mehlman-Orozco is a criminologist with no expertise in psychiatric diagnoses or PTSD in particular. It's also irrelevant if Plaintiffs do not elicit the testimony that Dr. Mehlman-Orozco claims to rebut, that of psychiatrist Dr. David Williamson.[42]

In any event, Dr. Mehlman-Orozco's opinion that prostitution *could* result in PTSD is a far cry from showing the probative value of other prostitution evidence substantially outweighs its prejudice. There is no evidence that other incidents of commercial sex outside of trafficking caused Plaintiffs harm let alone came anywhere close to the degree of trauma the Plaintiffs suffered at the *Red Roof*. Thus, whatever marginal value that some purported commercial sex act could add to Plaintiffs' damages claim pales in comparison to the prejudicial effect of this type

---

[39] *See, e.g.*, Doc. 500-2 at 9.

[40] *United States v. Chin*, 606 F. App'x 538, 540 (11th Cir. 2015).

[41] *See, e.g.*, Doc. 500-2 at 3.

[42] *See, e.g.*, *Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, 812 F App'x 803, 813 (11th Cir. 2020) (affirming exclusion of a defendants' rebuttal expert where "there is nobody to rebut").

of presumptively inadmissible evidence. This evidence is simply not "sufficiently probative of [the victim's] psychological or emotional damage to substantially overcome the risk of harm of introducing such evidence."[43]

Evidence of other sexual trauma Plaintiffs might have experienced is likewise not so probative of damages to outweigh the harm and prejudice to the Plaintiffs. This case is about harm Plaintiffs suffered *at the Red Roof*. It is not about every other harm or traumatic experience, sexual or otherwise, that Plaintiffs have experienced in their lives. As Dr. Norman testified, prior trauma does not render the traumatic experience at the hotel any less traumatizing or any less painful.[44]

For this same reason, Defendants' apportionment argument fails. If it applies, the Georgia apportionment statute requires the jury to determine the total amount of damages "for the injury" to the Plaintiffs and then "apportion its award of damages" based on percentage of fault.[45] Here, "the injury" to the Plaintiffs for which they seek compensation is (and can only be) the injury that the Red Roof Defendants proximately caused.[46] Thus, the starting point for awarding damages is not all of

---

[43] *See, e.g.*, *Medina v. United Christian Evangelistic Ass'n.*, No. 08-22111-CIV, 2009 WL 3618345, *1–2 (S.D. Fla. Oct. 29, 2009) (denying a Rule 412 motion).
[44] Norman Dep. at Day 3 81:15–25, excerpt attached as Ex. B.
[45] O.C.G.A. § 51-12-33.
[46] *See, e.g.*, *Bennett v. Jones*, 218 Ga. App. 714, 715 (1995) (holding that the defendant can be liable only for injury it proximately caused). In contrast, apportionment does not apply to damage resulting from concerted action, as is the

16

#5016647v1

Plaintiffs' injuries they suffered in their lifetime.[47] It's not even all their injuries suffered while being trafficked. It is only the injury that Red Roof proximately caused. Thus, evidence of Plaintiffs' other sexual conduct outside of the Red Roof can have no bearing on apportionment.

Defendants finally point to Plaintiffs' expert, Anique Whitmore, who addressed various "vulnerabilities" arising from prior sexual conduct that often make a person susceptible to the force, fraud, and coercion of a trafficker. It is not clear, though, whether Ms. Whitmore will need to go into this topic, particularly if Defendants are not permitted to cross-examine the Plaintiffs about these vulnerabilities, as Rule 412 presumptively provides.[48] In other words, Plaintiffs may not in fact open the door to addressing their own vulnerabilities. And if they don't, Defendants have no argument for the relevance of their Rule 412 evidence. For those reasons, this Court should deny Defendants' motion.

---

case for Plaintiffs' RICO conspiracy claim. In that context, Red Roof is jointly and severally liable for acts of any member of the conspiracy.

[47] *See, e.g.*, *Fried v. Leong*, 946 P.2d 487, 489 (Colo. App. 1997), *as modified on denial of reh'g* (Mar. 20, 1997) (holding that apportionment applies only to those parties who had a role in the "claimed injury" that the defendant caused).

[48] This Court has already expressed skepticism that these vulnerabilities are relevant, PTC Tr. 42:14–18, and Defendants "agree a hundred percent that their vulnerability to trafficking is not relevant." 45:10–11.

#5016647v1

## **CONCLUSION**

This Court should deny Defendants' untimely motion under Rule 412(c) and make clear that, at this stage, Defendants can admit evidence of Plaintiffs' sexual conduct only (1) if Plaintiffs open the door or (2) if the evidence is truly inextricably intertwined with the sex trafficking at the Red Roof, something the Court can decide when Plaintiffs object at trial. And even if the Court nonetheless considered Defendants' bases for admitting this evidence, it should reject them. None is sufficient to meet the high bar of substantially overcoming the harm to the Plaintiffs of having to relive every sexual trauma in their past in open court or the prejudice to the Plaintiffs by suggesting to the jury that, because they engaged in some sexual act at another time, their account of being forced, defrauded, or coerced into sex at the Red Roof is somehow false. That is exactly what Rule 412 forbids. This Court should not allow it.

18

This 4th day of June, 2024.

/s/Tiana S. Mykkeltvedt
John E. Floyd
Georgia Bar No. 266413
floyd@bmelaw.com
Tiana S. Mykkeltvedt
Georgia Bar No. 533512
mykkeltvedt@bmelaw.com
Manoj S. Varghese
Georgia Bar No. 734668
varghese@bmelaw.com
Amanda Kay Seals
Georgia Bar No. 502720
seals@bmelaw.com
Michael R. Baumrind
Georgia Bar No. 960296
baumrind@bmelaw.com
**BONDURANT, MIXSON & ELMORE, LLP**
1201 W. Peachtree St., N.W.
Suite 3900
Atlanta, Georgia 30309
(404) 881-4100 – Telephone
(404) 881-4111 – Facsimile

Patrick J. McDonough
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
Jonathan S. Tonge
jtonge@atclawfirm.com
Georgia Bar No. 303999
**ANDERSEN, TATE & CARR, P.C.**
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 – Telephone
(770) 822-9680 – Facsimile

*Attorneys for Plaintiffs*

Signature Page

#5016647v1

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that this document complies with the font and point selections set forth in Local Rule 5.1.  This document was prepared in Times New Roman 14 point font.

*/s/ Tiana S. Mykkeltvedt*

Certificate of Compliance

#5016647v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of June, 2024, I served a true and correct copy of the within and foregoing **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS TO ADMIT AND USE AT TRIAL CERTAIN EVIDENCE UNDER RULE 412** using the CM/ECF filing system which will cause copies to be served on all counsel of record.

*/s/ Tiana S. Mykkeltvedt*

Certificate of Service

#5016647v1