UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| W.K., et al., | ) | Judge Victoria M. Calvert |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-05263-VMC |
| | ) | |
| | ) | |
| Red Roof Inns, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RRI DEFENDANTS' REPLY IN SUPPORT THEIR BENCH BRIEF ON THE APPLICATION OF JOINT AND SEVERAL LIABILITY UNDER THE TVPRA**

Plaintiffs are incorrect, joint and several liability does not apply under the TVPRA—state law does. And even if it did not, the federal common-law rule that applies is apportionment, not joint and several liability. Thus, for the reasons stated in its opening brief (Doc. 482), at oral argument on May 29, 2024, and below—this Court should hold O.C.G.A. 51-12-33 applies, or alternatively apportionment applies under Section 1595 of the TVPRA.

**I.    LAW & ARGUMENT**

    **A.    TVPRA is silent on joint and several liability**

Section 1595 of the TVPRA is silent on the issue of joint and several liability. Pls. Opp. at 5–7 (Doc. 493). Its statutory text makes this clear, stating only that "an individual who is a victim of a violation" of the TVPRA is entitled to recover "damages and reasonable attorney fees." 18 U.S.C. § 1595.

Section 1595 says nothing else. It does not mention liability let alone state that liability is joint and several. And Plaintiffs cannot overcome this silence using Judge Thrash's decision in *K.M. v. Reva Properties, LLC*, No. 1:22-CV-3991-TWT, 2024 WL 1217420, at *1 (N.D. Ga. Mar. 21, 2024). Pls. Opp. at 6–7 (Doc. 493). To start, *K.M.* does not control or bind this Court. But even if it did, *K.M.* does not address the issue. Rather, it involved a different procedural question. In *K.M.*, plaintiff asserted a claim against defendants under the TVPRA, the defendant filed notices to apportion fault under O.C.G.A. 51-12-33, and the plaintiff moved to strike the notices arguing O.C.G.A. 51-12-33 did not apply to the TVPRA. Judge Thrash denied the motion, finding the notices were not subject to a motion to strike, and even if they were, Plaintiff had not carried her burden. *Id.* at *2.

Before denying, however, Judge Thrash expressed doubt that O.C.G.A. 51-12-33 applied to TVPRA-only claims. *Id.* (expressing skepticism that Georgia apportionment statute controls under the TVPRA when there are not "any state law claims alleged."). In doing so, he simply explained that he would be "surprised" that Congress would not have articulated apportionment if that were what it meant. *Id.* But, respectfully, Judge Thrash's non-binding "doubts" and "skepticism" do not control this Court's analysis. Nor do they change the fact that Section 1595 is silent on joint and several liability. In fact, even Judge Thrash recognized that plaintiff "has not provided any case law or other authority that clearly states that

2

apportionment is prohibited for TVPRA claims." *Id.* And given that, Judge Thrash deferred the issue for summary judgment or trial. *Id.* That is where we are now, and this issue is now properly before this Court. *K.M.* does not control.

Equally flawed is Plaintiffs' attempt to overcome the statutory silence by pointing to Section 1593's restitution provision. Pls. Opp. at 6–7. Section 1593 states that restitution "shall" be ordered for any offense under the TVPRA, and restitution must be enforced "in accordance with section 3664[.]" Under Section 3664, the court can ***either*** hold each defendant liable for the full amount, or it can apportion. 18 U.S.C. § 3664(h). This statute confirms that Congress knows how to state when liability is joint and several. It did not do that in Section 1595, so the silence is deliberate. Plaintiffs are incorrect that this is dispositive on any joint and several liability issue.

Similarly faulty is Plaintiffs' reliance on *Ditullio v. Boehm*, 662 F.3d 1091 (9th Cir. 2011), which found punitive damages are available under the TVPRA. Pls. Opp. at 7–8 (Doc. 493). First, RRI Defendants dispute the availability of punitive damages under the TVPRA, and thus disagree *Ditullo* controls any issue, let alone the separate issue of joint and several liability.[1] Second, the mere fact that *Ditullo*

---

[1] And not only that, but *Ditullio* is factually distinguishable because it did not consider whether punitive damages were available in a TVPRA beneficiary claim. It only considered punitive damages for a TVPRA perpetrator claim. And make no mistake, its common-law analysis, and finding, turned on this fact:

applied common law principles to determine the availability of punitive damages is not dispositive. Rather, in *Ditullo*, the Ninth Circuit attempted to resolve (though incorrectly) whether "damages" included "punitive damages." *Ditullio*, 662 F.3d at 1096 (citation omitted) ("Standing alone, the term 'damages' is ambiguous: it could refer to compensatory damages, punitive damages, nominal damages, or some combination of the three."). *Ditullio* did not consider statutory silence; it turned to common law to resolve ambiguity. Thus, neither *Ditullo*, nor any other case stating that punitive damages may apply under the TVPRA speak to, let alone control, the issue of joint and several liability.

### B. Federal common law supports apportionment and not joint and several liability.

Even if this Court applied federal common law (which it should not), the rule is apportionment, not joint and several liability. Start with the Third Restatement. Published in 2000, it states that when the conduct of two or more independent tortfeasors legally cause an indivisible injury, state law controls to determine joint or several liability:

> If the independent tortious conduct of two or more persons is a legal cause of an indivisible injury, the law of the applicable jurisdiction determines whether those persons are jointly and severally liable,

---

A plaintiff bringing a civil action under the TVPA must prove that the defendant has engaged in human trafficking, which Congress described as "a contemporary manifestation of slavery." Such conduct obviously meets the common law standards for award of punitive damages because it is both intentional and outrageous. *Id.* at 1098 (cleaned up).

severally liable, or liable under some hybrid of joint and several liability.

Restatement (Third) of Torts § 17 (2000).

This rule exists because, as of 2000, when the Third Restatement was published, joint and several liability "[had] been substantially modified in most jurisdictions" through "tort reform during the 1980s and 1990s." *Id.* § 17 cmt. a (2000). Put simply, joint and several liability was not the rule when Congress passed the TVPRA eight years later. And it was against this considerable shift in the law that Congress passed Section 1595(a). *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991). Thus, joint and several liability was not the traditional rule—rather, the model was to turn to state law.

Plaintiffs do not address this argument. Instead, they argue the Second Restatement supports joint and several liability because Plaintiffs have suffered a single harm. Pls. Opp. at 13–14. This misstates the rules and the facts. First, the Second Restatement says that ***apportionment*** is the rule when:

> Damages for harm are to be apportioned among two or more causes where (a) there are distinct harms, ***or*** (b) there is a reasonable basis for determining the contribution of each cause to a single harm.

Restatement (Second) of Torts § 433A (1965) (emphasis added). As discussed in RRI Defendants' opening brief, a reasonable basis to apportion exists here. In fact, Plaintiffs allege the following:

5

- That they endured the similar conduct at different hotels and with different individuals unrelated to RRI Defendants. Doc. Nos. 170–181.

- That they engaged in voluntary prostitution both on their own and with other individuals.

- That they endured abuse at the hands of various individuals, including family members, who are unconnected to RRI Defendants. *See* Whitmore Rep. at 15–67, Doc. No 480-1.

A jury can assess and apportion fault by considering these instances and factors such as the number of visits, degree of involvement, expert testimony on the effect of the abuse, alongside other available evidence. Restatement (Third) of Torts § 8 (2000). Thus, there will be evidence supporting a reasonable basis to allocate based on cause and fault. *See* Doc. 482 (collecting authority).

And the lone fact that Dr. Norman stated that he could not "apportion symptoms to one traumatic exposure over another" (Pls. Opp. at 14, Doc. 493) is not dispositive. Rather, the Restatement asks not whether the specific injury can be apportioned, but whether there is a reasonable basis to determine "the contribution of each cause of a single harm." The focus is on the contribution, not on which parts of the injury can be specifically assigned to each defendant. This citation to a singular statement by Dr. Norman does not control. Rather, as stated, there is a reasonable basis for apportionment. Thus, apportionment, not joint and several liability, is the common-law rule, if there is one.

    **C.**    **State law should fill Section 1595's gaps on joint and several liability under Section 1988.**

This Court need not turn to the common-law, however, because Section 1988, the Supreme Court's holding in *United States v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979), and the Third Restatement allow state law, and specifically O.C.G.A. 51-12-33—to fill Section 1595's silence.

### 1. Section 1988 and the Court's holding in *Kimbell* dictate that state law should apply to fill in any gaps in Section 1595.

Plaintiffs start from the flawed premise that federal common law fills statutory gaps. Not true. Rather, it is long established that "[t]here is no federal general common law" because federal courts cannot seize the power of the states or Congress to make substantive rules of law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Given this, both Congress and the United States Supreme Court provide ways to determine how to fill in a federal statutory gap. Congress provided the analysis under Section 1988,[2] and the Court addressed the issue in *Kimbell Foods*.

Under both authorities, if the federal statute is silent and a uniform rule is unnecessary, state law should apply unless it is "inconsistent with the federal constitution or laws" (42 U.S.C. § 1988) or would frustrate specific objectives of the federal statute. *Kimbell Foods*, 440 U.S. at 728–29.

---

[2] Section 1988(a) states when a court has jurisdiction based on the provisions of "titles 13, 24, and 70 of the Revised Statutes." The TVPRA is part of Chapter 77 of Section 18 of the United States Code. Chapter 77 includes crimes that result from "Peonage, Slavery, and Trafficking in Persons." Section 18 was formerly title 70 of the Revised Statutes.

As explained in RRI Defendants' opening brief (Doc. 482), state law applies under this standard because:

- The TVPRA's plain language and legislative history do not address joint and several liability, leaving state law to fill in the gaps. (Doc. 482 at 3–4).

- The TVPRA does not require a uniform body of law on joint and several liability for a civil cause of action because state law furthers the TVPRA's goal by adequately deterring the wrongful behavior while providing a way for a victim of sex trafficking to obtain "damages." (Doc. 482 at 4–6).

- State law is not inconsistent with federal law or the objectives and purpose of the TVPRA. Rather, state laws provide complete legal remedies to ensure just compensation.

Given this, under Section 1988 and *Kimbell Foods*, this Court should apply state law to the TVPRA. Thus, O.C.G.A. 51-12-33 should govern all claims at trial.

### 2. State law should apply because a federal rule on joint and several liability does not exist.

Despite this straightforward application of this law to these facts, Plaintiffs argue that as a rule, joint, and several liability applies to "federal statutory torts." Pls. Opp. at 12 (Doc. 493). Nonsense. There is no rule for "federal torts." Rather, as discussed above, both Congress and the Court have provided step-by-step processes for determining how to fill in gaps in federal statutes. As discussed, the default is not to apply joint and several liability without analysis. Quite the contrary, the ability to create a federal rule does not negate the "basic aspect of our federalism" that the federal government always acts "against a background of existing state law, and that

8

federal law retains its incomplete and interstitial nature." *United States v. Honeywell Int'l Inc.*, 47 F.4th 805, 815 (D.C. Cir. 2022) (cleaned up).

The fact that joint and several liability has been applied to dissimilar federal statutes, like Section 1983 or the FELA, does not alter this outcome. For example, Plaintiffs' reliance on *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135 (2003) is misplaced. In *Norfolk*, the Court considered, in part, whether apportionment applied under the FELA. *Id.* at 160. In finding that it did not, the Court explained that both statutory text and context confirmed liability was joint and several. *Id.* at 160–61. In fact, the FELA's plain statutory language made this clear by stating railroad employers are "liable in damages" if the injury was caused "in whole or in part" by the employer's "negligence":

> Every common carrier by railroad while engaging in [interstate commerce], **shall be liable in damages** to any person suffering injury while ... for such injury ... **resulting in whole or in part from the negligence** of ... such carrier ....

45 U.S.C. § 51 (emphasis added). In this way, the FELA speaks directly to liability noting that an employer is responsible for an injury whether its negligence caused the entire injury, or just a part. In other words, joint and several liability is supported by the text because the FELA is not silent on the issue.

Similarly, Section 1983 speaks to liability, not just damages:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, **subjects, or causes to be subjected**, any citizen of the United States …

9

> ***shall be liable to the party injured*** in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (emphasis added).

Put simply, like the FELA, Section 1983 speaks to when a party ***is liable***. And it is against this backdrop that courts have applied joint and several liability. Section 1595, however, is not the FELA or Section 1983. Instead, Section 1595's statutory language, its purpose, and the legal backdrop against which it was enacted is patently different—confirming apportionment, not joint and several liability, applies.

First, Section 1595 does not speak in terms of liability or injury. Rather, Section 1595 provides a private cause of action to a "victim" of a violation of the TVPRA stating that if the elements are met, a victim can recover "damages." 18 U.S.C. § 1595. That is all it says. If Congress meant for liability to be joint and several, it could have said so—or at least could have spoken to a potential defendants' liability or referenced recovery for a plaintiff's entire "injury." But it did not. Congress instead chose to only use the word "damages." Nothing else. This silence is not a *carte blanch* invitation to apply a blanket rule for joint and several liability when the statute gives no support to this application.

Second, Section 1595 is one component of a comprehensive statutory scheme aimed at combatting human trafficking. 149 Cong. Rec. H10284 (daily ed. Nov. 4, 2003). Providing victims with a private cause of action is one component of that

10

statutory scheme. Unlike the FELA and Section 1983, compensation is not TVPRA's primary goal.

Finally, unlike the FELA (1908), and Section 1983 (1979), Congress passed Section 1595 *in 2008*, after decades of tort reform. As part of this reform, there was a trend away from joint and several liability. Restatement (Third) of Torts § 17 cmt. a (2000) (noting that joint and several liability "has been substantially modified in most jurisdictions" through "tort reform during the 1980s and 1990s."). Given this trend, the Third Restatement made clear that state law, like O.C.G.A. 51-12-33, governs this issue:

> If the independent tortious conduct of two or more persons is a legal cause of an indivisible injury, the law of the applicable jurisdiction determines whether those persons are jointly and severally liable, severally liable, or liable under some hybrid of joint and several and several liability.

Restatement (Third) of Torts § 17 (2000). It is against this backdrop that Congress legislated Section 1595. And Plaintiffs' own authority makes this clear: "[t]he state of affairs when [the statute] was enacted, . . . is the more important inquiry" when determining application of joint and several liability. *Norfolk & W. Ry. Co.*, 538 U.S. at 164. Thus, in 2008, it cannot be said that joint and several liability was the standard or traditional rule. Rather, both the Restatement (Third) and trend among the states make clear that joint and several liability was anything but the majority rule in 2008.

11

In sum, the relevant Restatement, Section 1988, and the Court's holding in *Kimbell Foods* show state law applies to fill Section 1595's statutory gap.

### D.  Applying joint and several liability would displace state law.

Applying joint and several liability to the TVPRA would displace state law. Indeed, it would usurp RRI Defendants' substantive right to apportion fault on Plaintiffs' claims for negligence and civil RICO. Plaintiffs ignore this point. Instead, they argue—for the first time—that this Court can side-step this critical issue because there is "doubt" that O.C.G.A. 51-12-33 applies to these claims. Pls. Opp. at 16–19, Doc. 493. Not true. O.C.G.A. 51-12-33 applies to both claims.

O.C.G.A. 51-12-33 (a) & (b) both apply and state that damages must be reduced by (1) the fault of the plaintiff or (2) the fault of any non-parties, if notice is filed at least 120 days before trial. Neither timing, nor technical compliance is at issue. Rather, RRI Defendants filed timely notices of apportionment. Doc. Nos. 170–181, 427–429. Plaintiffs did not object. And there is no dispute—Plaintiffs assert state-law claims for personal injury. Thus, the plain language of O.C.G.A. 51-12-33 applies to Plaintiffs' negligence and civil RICO claims. RRI Defendants have a substantive right to apportion fault.

#### 1.  O.C.G.A. 51-12-33 applies to Plaintiffs' negligence claims.

O.C.G.A. 51-12-33 applies to Plaintiffs' negligence claims. And Plaintiffs' cannot overcome this clear application by attempting to create statutory ambiguity

where none exists. Sure, Plaintiffs argue that O.C.G.A. 51-12-33(b) does not apply unless two of the remaining defendants are "corporations," rather than a different business entity. Pls. Opp. at 18–19, Doc. 493. This argument fails.

*First*, Plaintiffs never made this argument and cannot raise it now. In fact, they neither objected to RRI Defendants' notices of apportionment, nor disputed the application of apportionment to negligence, or civil RICO in the pretrial order. Doc. 499 at 11 (listing joint and several as to the TVPRA only). *Second*, no authority holds that O.C.G.A. 51-12-33 applies only when there is more than one corporate entity at trial. In fact, the Georgia Supreme Court made this clear finding the use of "persons" in O.C.G.A. 51-12-33(b) included all "persons who are liable." *Alston & Bird, LLP v. Hatcher Mgmt. Holdings, LLC*, 862 S.E.2d 295, 299 (Ga. 2021). In doing so, the Court explained that "subsection (b) permits the trier of fact to apportion the total damages award among **multiple named defendants** according to their respective percentages of fault." *Id.* (emphasis added). No court has ever limited "persons" under O.C.G.A. 51-12-33 to corporations. Thus, O.C.G.A. 51-12-33 applies when more than one defendant is sued. There are multiple Defendants remaining. Fault for negligence must be apportioned.

    **2.**    **O.C.G.A. 51-12-33 applies to Plaintiffs' civil RICO claims.**

O.C.G.A. 51-12-33 also applies despite Plaintiffs' lean on the Georgia Supreme Court's holding in *FDIC v. Loudermilk*, 826 S.E.2d 116, 127 (Ga. 2019),

and the appellate decision in *Hansford v. Veal*, 894 S.E.2d 215, 229 (Ga. Ct. App. 2023). In *Loudermilk*, the court found only that O.C.G.A. 51-12-33 did not abrogate the common-law rule for joint and several liability for those who acted in "concert," as that term was traditionally understood at common law. The court explained that when there was "concerted action," fault was not divisible, allowing joint and several liability as to those individuals. *Loudermilk*, 826 S.E.2d at 127. In other words, this is a secondary liability theory where the fault of one act is imputed to the other.[3] *Hansford* merely applied *Loudermilk* to a civil RICO conspiracy claim, when the conspiracy was admitted. *Hansford*, 894 S.E.2d at 229.[4]

Neither *Loudermilk* nor *Hansford* control this case. At the outset, Plaintiffs never pled this theory in their Amended Complaint, never raised it in their Pretrial Order, nor cited any of this authority. (Doc. 38, 499). Plaintiffs cannot raise this new theory for the first time at trial. And, at most, they alleged a civil RICO conspiracy claim under O.C.G.A. 16-14-4(c). Still, neither case stands for the proposition Plaintiffs assert. Neither prevents the jury from apportioning fault to non-parties or to others not engaged in the "concerted" action as defined at common-law. And even if they did, that rule does not apply unless and until the jury finds there is "concerted

---

[3] If the liability is imputed to the RRI Defendants based on Varahi's conduct, then Plaintiffs RP, EH, MB, DP released these claims.
[4] Neither case applied this finding to O.C.G.A. 16-14-4(a), or negligence. Any contention otherwise is meritless.

14

action" as that term was understood at common law. *Loudermilk* also does not apply to the TVPRA. It made clear its holding only applied to concerted action as that was understood at common law. The TVPRA, however, does not require a conspiracy or "concerted action." Congress also chose the word "venture," not "conspiracy" or acting in "concert."[5] Instead, Congress elected for liability when one "should have known," a constructive knowledge standard that does not liken itself to a conspiracy or concerted action. Nothing supports Plaintiffs' contention.

In sum, this is a multiclaim case against RRI Defendants where Plaintiffs allege RRI Defendants are liable under the TVPRA, civil RICO, and negligence for the harm Plaintiffs suffered from allegedly being sex trafficked. These are alternate theories of recovery. Damages will not be awarded separately. Doc. 482 at 9–11 (collecting authority). RRI Defendants have the right to apportion fault under O.C.G.A. 51-12-33. Applying joint and several liability to the TVPRA will displace state law. And Plaintiffs offer no authority that allows this Court to do that. Thus, state law, and apportionment, should apply to all claims.

## II.   CONCLUSION

This Court should apply O.C.G.A. 51-12-33 to all claims. Or if this Court does not apply state law, it should allow the jury to apportion fault under the TVPRA.

---

[5] This analysis applies to any argument under the "federal common-law" as well.

Dated: June 5, 2024

Respectfully submitted,

/s/ Marcella C. Ducca
Marcella C. Ducca (Ga. Bar No. 115079)
GREENBERG TRAURIG LLP
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
Telephone: 678.553.2100
duccam@gtlaw.com

Chelsea Mikula (pro hac vice)
Elisabeth C. Arko (pro hac vice)
Joseph A. Manno (pro hac vice)
Spencer Krebs (pro hac vice)
C. Ashley Saferight (pro hac vice)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Telephone: 216.592.5000
Facsimile: 216.592.5009
chelsea.mikula@tuckerellis.com
elisabeth.arko@tuckerellis.com
joseph.manno@tuckerellis.com
spencer.krebs@tuckerellis.com
ashley.saferight@tuckerellis.com

Sandra J. Wunderlich (pro hac vice)
TUCKER ELLIS LLP
100 South Fourth Street, Suite 600
St. Louis, MO 63102-1822
Telephone: 314.256.2550
Facsimile: 314.256.2549
sandra.wunderlich@tuckerellis.com

*Attorneys for Defendants Red Roof Inns, Inc., FMW RRI NC, LLC, Red Roof Franchising, LLC, RRI West Management, LLC, and RRI III, LLC*

16

## RULE 7.1D CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D) of the United States District Court of the Northern District of Georgia, the undersigned certifies that that submission to the Court was computer-processed, double-spaced between lines, and used Times New Roman font of 14-point size.

Dated: June 5, 2024

                                                    /s/ Marcella C. Ducca
                                                    Marcella C. Ducca

                                                  *One of the Attorneys for Defendants Red Roof Inns, Inc., FMW RRI NC, LLC, Red Roof Franchising, LLC, RRI West Management, LLC, and RRI III, LLC*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on June 5, 2024, a copy of the above was filed with the United States District Court for the Northern District of Georgia and served on counsel of record through the Court's CM/ECF system.

Dated: June 5, 2024

/s/ Marcella C. Ducca
Marcella C. Ducca

*One of the Attorneys for Defendants Red Roof Inns, Inc., FMW RRI NC, LLC, Red Roof Franchising, LLC, RRI West Management, LLC, and RRI III, LLC*