## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| W.K., et al., | ) | Judge Victoria M. Calvert |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | Case No. 1:20-cv-05263-VMC |
| v. | ) | |
| | ) | |
| Red Roof Inns, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION & MEMORANDUM
## IN SUPPORT OF DIRECTED VERDICT

Defendants Red Roof Inns, Inc., Red Roof Franchising, LLC, and RRI West

Management, LLC, (RRI Defendants) file this Memorandum in support of their

motion to for directed verdict under Rule 50(a).[1]

## I.     LEGAL STANDARD

"In deciding a motion for judgment as a matter of law, we review all the

evidence, drawing all reasonable inferences in favor of the nonmoving party."

*Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 724 (11th Cir. 2012). But

"the nonmovant must put forth more than a mere scintilla of evidence suggesting

that reasonable minds could reach differing verdicts." *Abel v. Dubberly*, 210 F.3d

---

[1] RRI Defendants file this memorandum supporting its motion for directed verdict
that was incorporated fully at the oral motion made on the record at trial on June
25, 2024. RRI Defendants file this in accordance with the Court's and the party's
agreement.

1334, 1337 (11th Cir. 2000). A directed verdict under Rule 50 is "proper when the evidence is so weighted in favor of one side that that party is entitled to succeed in his or her position as a matter of law." *Rogers v. Sheriff of Santa Rosa Cnty.*, Fla., No. 21-13994, 2023 WL 2566087, at *5 (11th Cir. Mar. 20, 2023) (quoting *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006)).

## II.   LAW & ARGUMENT

### A.   There is insufficient evidence of a beneficiary claim under the TVPRA.

The Eleventh Circuit clearly identified the elements of a TVPRA claim. Under the TVPRA, Plaintiffs must prove it is more likely than not that RRI Defendants:

> (1) knowingly benefited (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that the undertaking or enterprise violated the TVPRA *as to the plaintiff*, and (4) that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA *as to the plaintiff*.

*Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 719 (11th Cir. 2021) (emphasis added); *see K. H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063, at *2 (11th Cir. Feb. 9, 2024). These elements are specific to each plaintiff and the venture at issue. At the outset, the RRI Defendants dispute that there is sufficient evidence that all Plaintiffs were victims of sex trafficking under Section 1591 and that all alleged pimps committed trafficking under the same statute. But even so, Plaintiffs failed to meet their burden under Section 1595.

### 1.    There is no evidence that RRI Defendants knowingly benefitted from Plaintiffs' alleged trafficking.

There is no evidence that RRI Defendants knowingly benefited from participating in a sex trafficking venture as to Plaintiffs. The TVPRA is clear. To be liable, a defendant must "***knowingly*** benefit[], . . . financially or by receiving anything of value ***from participation*** in a venture. . . ." 18 U.S.C. § 1595(a) (emphasis added). The benefit must derive from a defendant's "participation." *See Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018). Put simply, the "benefit" prong has a causation element, and the benefit must come from the venture. *See Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022). There is insufficient evidence that any RRI Defendant "knowingly benefited" from participating in a volitional venture as to each Plaintiff.

In fact, the only evidence Plaintiffs offered was that (1) RRF and RRI West received fees, including a fees, that were based on gross room revenue, and (2) RRI Inc. "ultimately" received revenue from a litany of franchise fees paid by a franchisee. (Park 83–84; Ex. 338). There is, however, no evidence that any RRI Defendant received any portion of the Gross Revenues from RRI Buckhead, RRI Smyrna, or Varahi Smyrna (RRF only), let alone that any RRI Defendant knowingly received a portion of any money from Plaintiffs' alleged trafficking. A preexisting contractual obligation to receive a predetermined fee that simply uses Gross Room Revenue as a basis for the calculation is not actual knowledge that any RRI

Defendant benefitted from a sex trafficking venture as to Plaintiffs. Plaintiffs fail to establish this element.

### 2. There is insufficient evidence of participation in a venture.

A TVPRA claim also requires Plaintiffs to prove RRI Defendants participated in a venture that engaged in a violation of Section 1591. 18 U.S.C. § 1595(a). A "venture" is "an undertaking or enterprise involving risk and potential profit." *Doe #1*, 21 F.4th at 724. "Participation" ordinarily means "to take part in or share with others." *Id.* at 725 (participation requires "tak[ing] part in or shar[ing] with others in common or in an association"); *see also G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 559 (7th Cir. 2023) (citing *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003) (participation is "a desire to promote the wrongful venture's success[.]")).

Put differently, participation in a venture requires Plaintiffs to "(i) show at least some connection between the [Defendants] and the trafficker's actions (the common venture) and (ii) identify what actions [the Defendants] took to advance the object of the joint undertaking (participation in the common venture)." *G.W. v. Northbrook Indus. United, LLC, et al.*, Case No. 1:20-cv-05232, Doc. 148 at 11–12 (June 14, 2024) (Boulee, J.); *Doe (S.M.A.) v. Salesforce, Inc.*, No. 3:23-CV-0915-B, 2024 WL 1337370, at *13 (N.D. Tex. Mar. 28, 2024) (describing the Eleventh Circuit's formulation of the test as a "require[ment] that the alleged participant have an ongoing interest in the success of a specific venture and elect to further the ends of the venture beyond what would reasonably be expected in an ordinary commercial

transaction"); *J.C. v. I Shri Khodiyar, LLC*, 624 F.Supp.3d 1307, 1317 (N.D. Ga. 2022) (collecting cases). Plaintiffs did not meet this burden.

The record is clear. Plaintiffs testified that their pimps were the ones that allegedly trafficked them. Their pimps are the only ones that allegedly violated Section 1591. No one else. No other entity or person. Thus, to survive directed verdict, Plaintiffs needed to come forward with evidence that the RRI Defendants participated in a "common undertaking or enterprise involving risk and potential profit" with Plaintiffs' pimps. *Doe #1*, 21 F.4th at 726 (noting the first step in any TVPRA inquiry is to determine "the venture [Plaintiff] say[s] that [Defendants] participated in"). They did not.

Each Plaintiff testified about their interactions with employees at RRI Buckhead, RRI Smyrna, and Varahi RRI. When asked, nearly all Plaintiffs testified that they interacted with housekeeping (asking for towels and cleaning the room) and front desk (paying for rooms after checking in). These are routine interactions are common to any hotel stay; not evidence of participation. And references to employees that engaged as lookouts or engaged in intercourse with an employee are acting outside the course and scope of employment.

Plaintiffs cannot staunch this fatality by arguing that renting rooms to Plaintiffs' "pimps"—even over a longer time frame—amounts to participation. *See Doe #1*, 21 F.4th at 727 (renting a room to a customer, does "nothing to show that

the [hotels] participated in . . . the alleged sex trafficking ventures."). In fact, the Eleventh Circuit reaffirmed this principle, holding that a hotel operator financially benefitting from renting hotel rooms to a trafficker and observing signs of sex trafficking at the hotel is not enough to support a finding that the hotel operator participated in a sex trafficking venture. *See K.H.*, 2024 WL 505063, at *3-4. The Seventh Circuit similarly held that "largely indifferent" commercial relationships that provide only "off the shelf" services do not "participate" in their customer's affairs. *See G.G.*, 76 F.4th at 563–64. Renting rooms is not participation.

Equally unavailing is any argument that the RRI Defendants participated in a venture with Plaintiffs' "pimps" because it monitored reviews relating to prostitution and sex trafficking, investigated the properties, trained employees on the topics, and employed employees. This is the opposite of participation. To be sure, the Eleventh Circuit, and courts throughout the country, have rejected such contentions and arguments, even at the motion to dismiss phase. In fact, *Doe #1* squarely rejected the theory Plaintiffs advanced at trial, finding the fact that the defendant:

> [I]nvestigated the individual hotels, took remedial action when revenue was down, read online reviews mentioning prostitution and crime occurring generally at the hotels, and controlled the training of managers and employees who were allegedly involved in facilitating sex trafficking at the hotels[,]. . . [did not] suggest that the franchisors participated in an alleged common undertaking or enterprise with the [Plaintiff's] sex traffickers or others at the hotel who violated the statute."

*Doe #1*, 21 F.4th at 727.

Plaintiffs did not—and cannot—introduce evidence that RRI Defendants participated in a venture. The record shows that RRI Defendants monitored customer reviews relating to prostitution and sex trafficking, discussed those reviews, trained and offered training to employees on sex trafficking and prostitution, encouraged employees to call the police if they witnessed illegal activity, and took many other steps to address any allegations of sex trafficking and prostitution at RRI Buckhead, RRI Smyrna, or Varahi Smyrna. And the evidence is even more attenuated as to RRF because it was the franchisor. As the franchisor, it did not employ any individual at any property at any relevant time. And there is no vicarious or indirect liability claim as to RRF.  In sum, there is insufficient evidence that RRI Defendants participated in a venture with Plaintiffs' pimps. Plaintiffs have not established participation.

### 3. There is insufficient evidence that RRI Defendants knew or should have known they participated in a venture that violated the TVPRA as to Plaintiffs.

A TVPRA claim requires Plaintiffs to also prove a causal link between their alleged sex trafficking and the defendant. *See H.G. v. Inter-Continental Hotels Corp.*, 489 F.Supp.3d 697, 707 (E.D. Mich. 2020); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F.Supp.3d 147, 153-54 (E.D.N.Y. 2020). In other words, the RRI Defendants cannot be liable under Section 1595(a) unless ***they*** "knew or should have known" that Plaintiffs' pimps allegedly trafficked Plaintiffs. *Doe #1*, 21 F.4th at 726; *see also S.J.*, 473 F.Supp.3d at 154 ("The real issue is not, then, actual-versus-constructive knowledge but whether a defendant satisfies the knowledge element as to a

*particular* sex trafficking venture."); *G.G.*, 76 F.4th at 555 (noting that in cases of only one victim, "knowledge of the specific victim goes hand-in-glove with knowledge of the 'venture.'"); *id.* ("allegations that a civil defendant was aware of sporadic sex trafficking in low-budget hotels generally" is not TVPRA knowledge). Plaintiffs have not met this burden.

First, there is no evidence RRI Defendants knew Plaintiffs' pimps allegedly trafficked Plaintiffs. In fact, Plaintiffs were clear: they never told anyone at RRI Buckhead or RRI Smyrna that they were victims of sex trafficking. Nor was there any evidence that any RRI Defendant employee witnessed Plaintiffs alleged trafficking.[2] There is no evidence that any RRI Defendant had actual knowledge.

Second, there is no evidence the RRI Defendants "should have known" that Plaintiffs' pimps were allegedly trafficking them. Plaintiffs' theory of constructive knowledge existing based on "red flags" likewise fails. The generalized "red flags" Plaintiffs identified were high traffic of "johns" to and from their rooms with an exterior entrance, Plaintiffs' appearance (scantily dressed), requests for excessive towels, and excessive condoms in the rooms. These "red flags"—standing alone—

---

[2] Whitney testified that an individual pushing what she thought was a laundry cart saw her being assaulted by her pimp, Aldonte, in 2014 in the hallway at Varahi Smyrna, but this unnamed individual would have been a Varahi employee—not an RRI Defendant employee.

are not enough. This is because there is insufficient evidence that any RRI Buckhead or RRI Smyrna employee witnessed these red flags as to each individual Plaintiff.[3]

Plaintiffs cannot fill this gap by citing to general industry knowledge or a failure to implement policies to stop prostitution and sex trafficking. Neither general industry awareness, nor RRI Defendants' alleged failure to prevent trafficking, standing alone, equates to constructive knowledge that RRI Defendants should have known ***Plaintiffs*** were trafficked through the criminal conduct of ***their pimps*** under the TVPRA. But even so, the evidence shows that RRI Defendants provided active training on sex trafficking and had policies and procedures in place requiring staff to report suspicions of prostitution and sex trafficking to the police.

### B.    There is insufficient evidence under O.C.G.A. § 16-14-4(a).

Under Georgia law, liability may occur "for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." O.C.G.A. § 16-14-4(a). A "pattern of racketeering activity" means "[e]ngaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same

---

[3] And even if they did, there is extensive testimonial evidence that these "red flags" are also signs of prostitution, which does not violate the TVPRA as to adults. *J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2020 WL 4901196, at *11 (N.D. Cal. Aug. 20, 2020) (allegations must "allow courts to infer that motel or hotel employees should have known that human trafficking was occurring, as opposed to other criminal conduct, such as prostitution"); *see A.B.*, 484 F.Supp.3d at 941 (same).

or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics." *Id.* § 16-14-3(4)(A).

"[R]acketeering activity" is the commission, attempted commission, solicitation, coercion, or intimidation of another "to commit any crime which is chargeable by indictment under" Georgia law. *Id.* § 16-14-3(5)(A). And "[a]ny person who is injured by reason of any violation of Code Section 16-4-4 shall have a cause of action" against the violator. *Id.* § 16-14-6(c).

The predicate acts at issue are prostitution (O.C.G.A. § 16-6-9), pimping (O.C.G.A. § 16-6-11); keeping a place of prostitution (O.C.G.A. § 16-6-10), and sexual servitude (O.C.G.A. § 16-5-46).[4] A person commits a crime either ***directly*** or by ***intentionally*** aiding, abetting, advising, encouraging, hiring, counseling, or procuring another to commit the crime. *See* O.C.G.A. § 16-2-20(b) (emphasis added). Not only did Plaintiffs not put on any evidence of that the RRI Defendants committed these acts (because they did not), but Plaintiffs also only pled that the RRI Defendants committed sexual servitude, kept a place of prostitution, and aided and abetted pimping and prostitution. No other violations of the law were pled. As discussed more fully below, there is insufficient evidence of every predicate act.

---

[4] RRI Defendants note that Plaintiffs under no circumstances can rely on unverified customer reviews, news articles, police reports, or any other hearsay statement to prove that any alleged crime occurred. These documents cannot be used to support directed verdict on this issue.

### 1.   Corporations have a specific standard for crimes.

Under Georgia law, corporate liability exists only if:

(1) The crime is defined by a statute which clearly indicates a legislative purpose to impose liability on a corporation, and an agent of the corporation performs the conduct which is an element of the crime while acting within the scope of his office or employment and in behalf of the corporation; or

(2) The commission of the crime is authorized, requested, commanded, performed, or recklessly tolerated by the board of directors or by a managerial official who is acting within the scope of his employment in behalf of the corporation.

O.C.G.A. 16-2-22 Plaintiffs must meet this requirement for each predicate act alleged. They failed to meet this burden.

### 2.   There is insufficient evidence that RRI Defendants committed prostitution or pimping.

There is no evidence that RRI Defendants themselves committed prostitution or pimping. Prostitution occurs when a person over 18-years "performs or offers or consents to perform a sexual act, including, but not limited to, sexual intercourse or sodomy, for money or other items of value." O.C.G.A. § 16-6-9. Pimping generally occurs when a person receives money without consideration based on a pro rata share. O.C.G.A. 16-6-11. RRI Defendants did not perform any sexual acts for money, nor did they engage in pimping.

Nor have Plaintiffs presented evidence that any RRI Defendant intentionally "aided and abetted" any person in the commission of prostitution or pimping. Aiding

11

and abetting requires Plaintiffs to establish that the RRI Defendants intentionally and "substantially assisted" in the commission of the alleged prostitution.

There is no evidence of intent to substantially assist in prostitution or pimping. Rather, the evidence shows that RRI Defendants had policies and procedures in place telling employees to report illegal activity—including prostitution and pimping. And there is specifically no evidence as to RRF. As discussed, RRF was the franchisor, it employed no one at either property. There is no evidence that it intentionally and substantially assisted in the commission of either of these crimes. In sum, there is no evidence that any RRI Defendant is a party to any crime of prostitution or pimping. *See DeArmond v. Robles*, No. 1:19-CV-4598-MHC, 2022 WL 1131954, at *13 (N.D. Ga. Mar. 11, 2022) (finding a defendant was not a party to the crime of prostitution because there was no evidence that when he transported the plaintiff to a hotel, she intended to commit prostitution, and nothing revealed he "intentionally aided or abetted" the commission of prostitution).

### 3. There is no evidence that RRI Defendants committed sexual servitude.

There is no evidence that RRI Defendants committed sexual servitude. Under Georgia law, "sexual servitude" means any sexually explicit conduct or performance that is induced or obtained through "coercion or force" from a person who is under the age of 18 years. O.C.G.A. 16-5-46(a)(8)(B). And under the statute in effect at

the time of Plaintiffs' alleged trafficking,[5] a person commits sexual servitude when he or she knowingly:

(1) Subjects an individual to or maintains an individual in sexual servitude;

(2) Recruits, entices, harbors, transports, provides, or obtains by any means an individual for the purpose of sexual servitude; or

(3) Solicits or patronizes by any means an individual to perform sexually explicit conduct on behalf of such person when such individual is the subject of sexual servitude

O.C.G.A. § 16-5-46(c) (2019).

Moreover, O.C.G.A.16-5-46(j) sets forth the standard for when a corporation can be prosecuted, or indicted, under this standard:

A corporation may be prosecuted under this Code section for an act or omission constituting a crime under this Code section only if an agent of the corporation performs the conduct which is an element of the crime while acting within the scope of his or her office or employment and on behalf of the corporation and the commission of the crime was either authorized, requested, commanded, performed, or within the scope of his or her employment on behalf of the corporation or constituted a pattern of illegal activity that an agent of the company knew or should have known was occurring.

---

[5] In July 2019, O.C.G.A. 16-5-46 was amended, and a person can commit sexual servitude if they knowingly "[b]enefit financially or by receiving anything of value from the sexual servitude of another." 2019 Georgia Laws Act 30 (S.B. 158). This prong has no application here, however, because the statute does not apply retroactively and cannot be used to prove a crime that did not exist. *Deal v. Coleman*, 751 S.E.2d 337, 342 (Ga. 2013) (noting that laws do not apply retroactively unless there is "some clear indication in the statutory text").

There is no evidence that any RRI Defendant engaged in sexual servitude as to these Plaintiffs. Plaintiffs were clear: their alleged traffickers were their pimps. No one else. There is no testimony, documentary or otherwise, showing that any RRI Defendant committed sexual servitude. This is even more definitive as to RRF and the Smyrna property, and as discussed, Varahi—not RRF—was the owner, operator, and employer of all individuals at RRI Smyrna. In other words, neither RRF, nor its employees, worked onsite or had any opportunity to encounter Plaintiffs or their pimps. This predicate act fails.

### 4. There is insufficient evidence of keeping a place of prostitution.

There is no evidence that RRI Defendants kept a place of prostitution. Keeping a place of prostitution occurs when a person (1) has control over the use of a place that provides "seclusion or shelter" for prostitution and (2) knowingly grants or permits the use of that place "." O.C.G.A. § 16-6-10. As to Varahi Smyrna, RRF did not own, control, or operate it; Varahi did. Similarly, RRF did not own, control, or operate RRI Buckhead or RRI Smyrna while those properties were corporate affiliates. Given this, RRF could not keep a place of prostitution.

Similarly, there is no evidence that any other RRI Defendant kept a place of prostitution. The reason is straightforward: knowledge of prostitution does not prove a defendant operated its hotel for the purpose of prostitution. As discussed, the evidence shows that both hotels have more than 100 rooms. To date, Plaintiffs have

offered evidence that prostitution may have occurred at this property. The jury has, however, heard no evidence that any RRI Defendant operated these hotels for the purpose of prostitution. Notice or awareness that individuals may have been engaged in this conduct after it happened is not evidence that the RRI Defendants knowingly granted their hotels for the purpose of prostitution.

Rather, RRI Defendants must be so involved in the alleged racketeering activity that it would be considered a perpetrator of the activity. Plaintiffs cannot show that Defendants were a passive instrument, its only tangential "involvement" being Plaintiffs differing stays and different times at its hotels. This is not criminal involvement. There is no evidence that the RRI Defendants engaged in racketeering activity, and thus Plaintiff's civil RICO claim fails as a matter of law. *See C.C.*, 2022 WL 467813 (dismissing the plaintiff's civil RICO claim for failing to plead a predicate act).

### C.    Plaintiffs' evidence is not relevant to O.C.G.A. 16-14-4(c).

O.C.G.A. 16-14-4(c) makes it illegal "for any person to conspire or endeavor to violate" O.C.G.A. § 16-14-4(a). To violate Section 16-14-4(c), one must either commit an overt act to "effect the object of" the endeavor or conspiracy or a co-conspirator must commit such an overt act. *See* O.C.G.A. § 16-14-4(c)(1)–(2). Under Georgia law, a person may be found liable for RICO conspiracy "if they knowingly and willfully join a conspiracy which itself contains a common plan or purpose to commit two or more predicate acts." *Wylie v. Denton*, 746 S.E.2d 689,

693 (Ga. Ct. App. 2013) (citing *Rosen v. Protective Life Ins.,* 817 F.Supp.2d 1357, 1382 (N.D. Ga. 2011)) (cleaned up).

And while the agreement to join a conspiracy does not "need not be express," there must at least be "a tacit mutual understanding between persons to pursue a common criminal objective." *Frazier v. State*, 826 S.E.2d 361, 364 (Ga. Ct. App. 2019) (quoting *Griffin v. State*, 751 S.E.2d 773, 775 (Ga. 2013)). The "essence of conspiracy" is "a common design and conduct which discloses a common design." *J.C. v. I Shri Khodiyar, LLC*, 624 F.Supp.3d 1307, 1324 (N.D. Ga. 2022) (quoting *Waldrip v. State*, 482 S.E.2d 299, 309 (Ga. 1997)). Thus, a conspiracy is not just an agreement to act or an omission from acting. It is an intentional decision by conspirators to work together to pursue a "criminal objective."

The evidence fails this standard. The predicate acts are simple. They include prostitution, keeping a place of prostitution, and sexual servitude. The only individuals with whom RRI Defendants could "conspire" with to commit these crimes include Plaintiffs, Plaintiff's alleged traffickers, and Varahi itself. Yet none of the evidence offered establishes that the RRI Defendants "knowingly and willfully" entered an agreement with any of these individuals—let alone show that it entered into this agreement with the "common plan" to "commit" prostitution, pimping, sexual servitude, or keeping a place of prostitution.

Instead, Plaintiffs put forth evidence, documents, and testimony, including: (1) observations of what they believed to be commercial sex on the properties, (2) statements from former employees, and one special agent, that they observed what they believed to be commercial sex on the properties, and (3) unverified online reviews that prostitution and sex trafficking may have occurred. But the fact that prostitution or sex trafficking may have occurred is not evidence that RRI Defendants engaged in a conspiracy to commit any crime. Quite the opposite. The evidence showed that RRI Defendants trained employees on prostitution and sex trafficking, trained, and advised their employees to call the police if they saw signs of illegal activity, sent management to the property to observe and talk to employees, investigated allegations of sex trafficking and prostitution, and trained general managers to establish relationships with local law enforcement. Taking these steps is not evidence of a conspiracy. And they are certainly not evidence that any RRI Defendant engaged in an overt act to further any conspiracy.

Instead, this evidence speaks to notice and awareness. But notice is not the standard for a conspiracy. Knowledge, willfulness, and an understanding to pursue a "common criminal objective" is the standard. These terms have meaning. *Doe #1*, 21 F.4th at 723–24 (quoting *Knowledge*, Black's Law Dictionary (11th ed. 2019) ("Knowledge" is "[a]n awareness or understanding of a fact or circumstance; a state of mind in which a person has no substantial doubt about the existence of a fact."));

*Willful*, Black's Law Dictionary (11th ed. 2019) ("willful" is an act that is "[v]oluntary and intentional, but not necessarily malicious . . . [t]he term *willful* is stronger than *voluntary* or *intentional*; it is traditionally the equivalent of *malicious*, *evil*, or *corrupt.*" (emphasis added)).

Further, Plaintiffs cannot overcome this evidentiary shortcoming by pointing to testimony from former employees that they did not receive training on prostitution or sex trafficking and were not told to call the police. While RRI Defendants dispute this testimony, standing alone it is not evidence of a conspiracy. Rather, a lack of training on identifying illegal activity, or a failure to report it when observed is not an overt act, nor is it evidence that the RRI Defendants agreed with any individual with the intent to commit two or more predicate acts. This evidence is insufficient.

Plaintiffs failed to provide evidence that (1) RRI Defendants knowingly and willfully entered a conspiracy to commit two or more predicate acts and (2) one member of the conspiracy committed an overt act to further that conspiracy.

### D.    There is insufficient evidence of causation.

"To establish a valid civil RICO claim, a plaintiff must show that the defendant violated or conspired to violate Georgia's RICO Act and that the RICO violation proximately caused injury to the plaintiff." *Overlook Gardens Props. v. Orix, USA, LP*, 884 S.E.2d 433, 447 (Ga. Ct. App. 2023) (cleaned up); *Five Star Athlete Mgmt. v. Davis*, 845 S.E.2d 754, 758 (2020) (citations omitted).

This requires a plaintiff to show that his injury "flowed directly from at least one of the predicate acts." *Najarian Capital v. Clark*, 849 S.E.2d 262, 270 (Ga. Ct. App. 2020) (citation omitted). "This burden is not met where a plaintiff shows merely that his injury was an eventual consequence of the predicate act or that he would not have been injured but for the predicate act." *Id.*; *Hansford v. Veal*, 894 S.E.2d 215, 224 (Ga. Ct. App. 2023). When a court evaluates a RICO claim for proximate cause, the central question is whether the alleged violation led directly to the plaintiff's injuries. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). Thus, a plaintiff asserting a RICO claim must allege more than that an act of racketeering occurred and that she was injured. That is, she must show that her injury resulted from a predicate act targeted toward her, such that she was the intended victim. *Wylie v. Denton*, 746 S.E.2d 689, 694 (Ga. Ct. App. 2013).

Plaintiffs' damages are non-economic: guilt, shame, depression, anxiety, and difficulty forming relationships. A lay person cannot determine whether these alleged harms are caused by any RICO violation (which RRI Defendants dispute exists) without expert testimony. To prove causation, Plaintiffs must provide expert medical testimony. Georgia's Supreme Court has held that expert evidence is required to establish causation when the issue involves a medical question. *Cowart v. Widener*, 697 S.E.2d 779, 784 (Ga. 2010). A medical question exists when the existence of a causal link between the defendant's conduct and Plaintiffs' injuries

cannot be determined from common knowledge and experience and instead requires help from experts with specialized medical knowledge. *Id.*; *Rivera v. Royal Caribbean Cruises Ltd.*, 711 F. App'x 952, 954 (11th Cir. 2017) ("When the causal link between alleged injuries and the incident at issue is not readily apparent to a lay person, expert medical testimony as to medical causation is typically required.").

Thus, "Georgia law is clear that medical causation must come from expert testimony and must provide a causal connection that is 'more than a mere chance or speculation.'" *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1304 (11th Cir. 2009) (quoting *Anthony v. Chambless*, 500 S.E.2d 402, 404 (1998)). Whether sex trafficking at a specific hotel, or prostitution or pimping on a specific occasion can cause a myriad of non-economic damages including depression or anxiety is beyond the precept of a lay juror.

This is true even though Plaintiffs offered expert testimony on both the effect of sex trafficking and trauma generally because they did not connect these experts to Plaintiffs. Thus, the general expert testimony is unhelpful to the jury. As Plaintiffs have repeatedly told this Court—they are only seeking to recover damages resulting from the conduct at Red Roof. They offer no expert testimony connecting Plaintiffs' experiences to their alleged injuries at Red Roof. And no witness could show that any predicate act that occurred at Smyrna or Buckhead was the proximate cause of

20

Plaintiffs' injuries. Plaintiffs were asked how their experiences at Red Roof "affected them," but they are not qualified to opine on causation.

This is especially true when Plaintiffs have extensive history of sexual assault, drug addiction, and other preexisting events that could be the cause of their alleged injuries. *See Smith v. CSX Transp., Inc.*, 806 S.E.2d 890, 897 (Ga. Ct. App. 2017) (citing *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 770 (7th Cir. 2014)) ("[i]n particular, for most cumulative trauma injuries, courts follow the general principle that a layman could not discern the specific cause and thus they have required expert testimony about causation."). Other courts have found that PTSD (although no mention of that exists here), anxiety, and depression are beyond a lay person's comprehension and require expert testimony. *Taylor v. Shreeji Swami, Inc.*, 820 F. App'x 174, 178 (4th Cir. 2020); *State Off. of Risk Mgmt. v. Larkins*, 258 S.W.3d 686, 691 (Tex. App. 2008). Plaintiffs' failure to proffer expert testimony on their damages and causation is fatal.

### E.    Negligence

#### 1.    Statute of limitations.

O.C.G.A. § 9-3-33 sets a two-year statute of limitations for personal injury claims, including negligence. This clock starts to run "when the plaintiff could first have maintained [an] action to a successful result." *U-Haul Co. of W. Ga. v. Abreu & Robeson, Inc.*, 277 S.E.2d 497, 499 (Ga. 1981) (citing *Mobley v. Murray Cnty.*, 173 S.E. 680 (Ga. 1933)). The statute of limitations began to run when Plaintiffs'

alleged trafficking occurred. *See G.W. v. Northbrook Indus., Inc.*, No. 1:20-CV-05232-JPB, 2022 WL 1644923, at *4 (N.D. Ga. May 24, 2022) (plaintiff's negligence claim was time-barred when filed more than two years after the alleged trafficking). Buckhead Plaintiffs alleged trafficking took place from 2009 to April 2018. Any claim had to be filed no later than April 2020. Similarly, the Smyrna Plaintiff at issue, Melanie, alleges her trafficking took place between 2010-2012. Her claim had to be filed by 2014. All Plaintiffs filed December, 29 2020.

And O.C.G.A. § 9-3-99 does not toll Plaintiff's claims, let alone toll her claims for six years. Rather, O.C.G.A. § 9-3-99 tolls tort claims arising from criminal activity while the underlying crime is being prosecuted, assuming the prosecution or investigation does not exceed six years. *See A.G. v. Northbrook Indus., Inc.*, No. 1:20-CV-05231-JPB, 2022 WL 1644921, at *5 (N.D. Ga. May 24, 2022) ("The Court of Appeals of Georgia has held that [O.C.G.A. 9-3-99] contemplates extending the time in which a victim may file a tort action where there are pending criminal charges arising out of the same facts or circumstances.") (emphasis added); *see also Armstrong v. Cuffie*, 860 S.E.2d 504, 508 (Ga. 2021) (stating that the limitation period may be tolled by "active criminal prosecutions.") (emphasis added). Establishing any tolling is Plaintiffs' burden, which they have not met (or tried to meet). *Harrison v. McAfee*, 788 S.E.2d 872, 874 (Ga. Ct. App. 2016) (citation omitted). There is no evidence, other than from Whitney, that any pimp has

been investigated or is incarcerated for any crime related to Plaintiffs allegations. The tolling provision fails.

## 2. There is insufficient evidence of negligence.

### a. Duty

Plaintiffs allege that RRI Defendants were negligent under a premises liability theory. O.C.G.A. § 51-3-1. To recover on premises liability, a plaintiff must present evidence of a duty, a breach, causation, and damages. *Ga. CVS Pharm., LLC v. Carmichael*, 890 S.E.2d 209, 219 (Ga. 2023). Under Georgia law, a premises owner is liable for the failure to exercise ordinary care in keeping a premises safe when the individual is an invitee who is on the property for a lawful purpose. O.C.G.A. § 51-3-1. This duty can include a duty to exercise ordinary care to keep invitees safe from third-party criminal conduct that is foreseeable. As the Georgia Supreme Court stated, "[i]f the proprietor has reason to anticipate a criminal act, he or she then has a duty to exercise ordinary care to guard against injury from dangerous characters." *Carmichael*, 890 S.E.2d at 219 (citing *Lau's Corp. v. Haskins*, 405 S.E.2d 474, 492 (Ga. 1991)).

These duties, however, only apply to invitees. A person is an invitee "[w]here an owner or occupier of land, by express or implied invitation, induces or leads [the person] to come upon his premises for any lawful purpose." On the other hand, a licensee "is one whose visit is 'merely for his own interests, convenience, or

gratification.'" *Freeman*, 705 S.E.2d at 923 (citing O.C.G.A. § 51–3–2(a)(3); *Behforouz v. Vakil*, 636 S.E.2d 674, 675 (Ga. Ct. App. 2006)).

There is insufficient evidence that Plaintiffs were invitees. Rather, Plaintiffs admitted they were at the property for the purpose of commercial sex, which is unlawful. They were not invitees. Given this, the standard under O.C.G.A. § 51-3-1 and *Carmichael* do not apply. Judge Boulee came to this exact decision just last week when he granted summary judgment in a sex trafficking claim relating to negligence. *G.W.,* Case No. 1:20-cv-05232, Doc. 148 (June 14, 2024) (Boulee, J.).

And the duty articulated in *Carmichael* only applies to premise owners. RRF never owned or controlled RRI Buckhead or RRI Smyrna. RRF is the franchisor. There is no evidence that RRF is vicariously liable for the acts of any other RRI Defendant. Rather, the Franchise Agreements, Management Agreements, and testimony makes clear that RRI West, not RRF, operated both properties while affiliate owned. Thus, Plaintiffs' that have failed to prove RRI Defendants owed Plaintiffs a duty as a matter of law and their negligence claim fails.

### b.    Causation

Setting duty to one side, Plaintiffs must also establish causation. Here, Plaintiffs must prove that RRI Defendants' negligence was both the "cause-in-fact" and the "proximate cause" of their injury. *Blondell v. Courtney Station 300 LLC*, 865 S.E.2d 589, 594–95 (Ga. Ct. App. 2021). Cause-in-fact requires that, but for the defendant's act, the injury to the plaintiff would not have occurred. *See Strength v.*

*Lovett*, 714 S.E.2d 723, 730 (Ga. Ct. App. 2011) ("To show that the wrongful conduct of the defendant is a cause in fact of his injuries, a plaintiff ordinarily must prove that, but for this conduct, he would not have sustained the injury[.]").

Plaintiffs have offered no evidence that RRI Defendants' negligence, or failure to exercise reasonable care, caused Plaintiffs' injuries. While they have presented evidence that RRI Defendants should have done more, they have not established that but-for or as the result of some act or failure by RRI Defendants that Plaintiffs would not have been injured. To the contrary, Plaintiffs explained that nearly all of them returned to their pimp and continued to engage in commercial sex work. In other words, there is insufficient evidence that "but for" RRI Defendants' conduct Plaintiffs sustained injury.

Plaintiffs have also failed to meet their burden on proximate causation. A breach of a duty constitutes a proximate cause of an injury only if the injury is the "probable" result of the breach, "according to ordinary and usual experience," rather than "merely [a] possible" result of a breach, "according to occasional experience." *Maynard v. Snapchat, Inc.*, 870 S.E.2d 739, 746 (Ga. 2022). An intervening superseding act also cuts off the causal chain. *E.g.*, *Williams v. Grier*, 26 S.E.2d 698, 704 (Ga. 1943) (quoting *S. Ry. Co. v. Webb*, 42 S.E. 395, 395 (Ga. 1902)).

There is no evidence that Plaintiffs' injury was foreseeable or probable result of RRI Defendants' conduct. The criminal acts of third parties— Plaintiffs' pimps—

was not foreseeable to RRI Defendants. And Plaintiffs offered no evidence establishing foreseeability. At most, they put forth evidence that RRI Defendants had notice of prostitution, trained its employees on the topic, and aimed to identify and work with the police on identifying and reporting illegal activity. None of the evidence was specific to Plaintiffs or RRI Defendants. This does not establish foreseeability or proximate causation.

Finally, Plaintiffs have not provided expert testimony relating to causation. RRI Defendants reincorporate and reassert all authorities and arguments in their argument on causation under RICO as if fully stated. For those same reasons, Plaintiffs have failed to prove causation as a matter of law on negligence.

### c.   Damages

All those failures aside, Plaintiffs have not established damages either. The general rule in Georgia is that a plaintiff cannot recover for emotional distress damages owing to a defendant's negligence unless she has sustained a physical impact because of such negligence. *Snell v. NES Admin. Servs., Inc.*, No. 1:20-CV-03693-CC-RDC, 2021 WL 2666879, at *5 (N.D. Ga. Mar. 29, 2021), *R. & R. adopted*, 2021 WL 2666877 (N.D. Ga. May 25, 2021). Plaintiffs have not alleged or offered any evidence relating to a physical impact, let alone one tied to RRI Defendants' negligence. Plaintiffs offered no testimony, expert or otherwise, that would allow a rational juror to determine compensatory damages for the alleged injuries. Moreover, damages for mental pain and suffering without physical injury

is available only when a plaintiff shows the injury resulted from willful and wanton conduct. *E.g.*, *Clarke v. Freeman*, 692 S.E.2d 80, 84 (Ga. Ct. App. 2010) ("A party claiming negligent infliction of emotional distress must therefore show a physical impact resulting in physical injury. On the other hand, where the defendant's conduct is malicious, wilful [sic], or wanton, recovery can be had without the necessity of an impact."). Beyond this, "willful and wanton" requires "sufficient facts" that shows a defendant's conduct "was directed at" the plaintiff. *Id.* at 84–85. There is no evidence that any RRI Defendant acted willfully or wantonly to harm Plaintiffs. Plaintiffs failed to meet their burden on damages.

### F. Punitive Damages

#### 1. Georgia law

To begin, Plaintiffs are not entitled to punitive damages as a matter of law for any state-law claim. Georgia law is clear:

> In a tort action in which the entire injury is to the peace, happiness, or feelings of the plaintiff, no measure of damages can be prescribed except the enlightened consciences of impartial jurors. In such an action, punitive damages under Code Section 51-12-5 or Code Section 51-12-5.1 shall not be awarded.

O.C.G.A. 51-12-6; *Carnegay v. Wal-Mart Stores, Inc.*, 898 S.E.2d 871, 877 (Ga. Ct. App. 2024), *cert. denied*, (June 11, 2024) (punitive damages not available for false imprisonment). Plaintiffs allege non-economic damages for pain and suffering, and their testimony was clear: alleged damages relate to anxiety, depression, guilt, shame, and inability to form relationships. Punitive damages are unavailable.

27

But even if they were, there is insufficient evidence of punitive damages. O.C.G.A. § 51-12-5.1(b) states that "Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." These damages are (1) are awarded "solely to punish, penalize, or deter," and (2) may be awarded only if the defendant's actions showed a state of mind reflecting some extra degree of culpability, such as "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. §§ 51-12-5.1(b), (c). Punitive damages may not be awarded when the defendant's actions sound only in negligence; mere negligence, or even gross negligence, is not sufficient. *Taylor v. Devereux Found., Inc.*, 885 S.E.2d 671, 683 (Ga. 2023).

There is insufficient evidence of punitive damages. The evidence makes clear that RRI Defendants were monitoring reviews, providing training to its employees, creating policies that required RRI Buckhead and RRI Smyrna to report illegal activity to the police, and reporting instances of prostitution and illegal activity to law enforcement. The evidence cannot establish punitive damages under Georgia law. But if this Court finds there is sufficient evidence for the jury to determine punitive damages (it should not), RRI Defendants will move for this Court to apply

the $250,000 cap because there is no evidence that any RRI Defendant acted, or failed to act, with a specific intent to cause harm. O.C.G.A. § 51-12-5.1(j).

### 2.    TVPRA

Punitive damages are not available under the TVPRA. And while RRI Defendants acknowledge that the Ninth and Tenth Circuits have held to the contrary, those courts did so under general tort law principles and the perpetrator provision. This case is different. It does not involve a perpetrator claim, it involves a beneficiary claim. RRI Defendants agree with the dissent in *Ditullo*, the legislative history does not support punitive damages: "[a] review of the TVPA's legislative history shows that far from deferring to federal common law, Congress in 2003, when it created a private cause of action under TVPA, considered and declined to adopt language authorizing punitive damages." *Ditullio v. Boehm*, 662 F.3d 1091, 1104–05 (9th Cir. 2011) (Callahan, J., dissenting). This view is also supported by principles of statutory interpretation, which show that Congress understands how to include punitive damages when it intends to make them available. *See, e.g.*, 18 U.S.C. § 2710 (listing punitive damages); 18 U.S.C. § 2724 (same); 18 U.S.C. § 2707 (same); 18 U.S.C. § 2520 (same); 18 U.S.C. § 2255 (same).

Moreover, RRI Defendants note that punitive damages are unavailable under the Supreme Court's holding in *Dutra Group v. Batterton*, 588 U.S. 358 (2019). *Batterton* set forth a test to determine whether punitive damages were permitted under federal law. *Batterton*, 588 U.S. at 369. Under this test, damages are available

only if: (1) the damages "have traditionally been awarded" for this claim; (2) "[c]onformity with parallel statutory schemes would require such damages"; or (3) the court is "compelled on policy grounds" to allow the damages. *Id.* None of these prongs have been met.

But even if punitive damages were available, there is insufficient evidence of them. Like Georgia, punitive damages under federal law requires evidence that defendant's conduct is "outrageous," owing to "gross negligence," "willful, wanton, and reckless indifference for the rights of others," or behavior even more deplorable. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 493 (2008) (citing Restatement (Second) of Torts § 908(2)). Recklessness is not enough. As stated, this standard is not met.

### G. Attorney Fees.

In addition, there is no evidence that the Plaintiffs met their burden on attorney fees under O.C.G.A. 13-6-11 beause there is no evidence of bad faith, stubborn litigation, pr unnecessary trouble and expenses.

Dated: June 25, 2024    Respectfully submitted,


      */s/ Marcella C. Ducca*
      Marcella C. Ducca (Ga. Bar No. 115079)
      GREENBERG TRAURIG LLP
      Terminus 200
      3333 Piedmont Road NE, Suite 2500
      Atlanta, GA  30305
      Telephone: 678.553.2100
      duccam@gtlaw.com

      Sandra J. Wunderlich (pro hac vice)
      TUCKER ELLIS LLP
      100 South Fourth Street, Suite 600
      St. Louis, MO 63102-1822
      Telephone: 314.256.2550
      Facsimile: 314.256.2549
      sandra.wunderlich@tuckerellis.com

      Chelsea Mikula (pro hac vice)
      Elisabeth C. Arko (pro hac vice)
      Joseph A. Manno (pro hac vice)
      Spencer Krebs (pro hac vice)
      TUCKER ELLIS LLP
      950 Main Avenue, Suite 1100
      Cleveland, OH  44113-7213
      Telephone: 216.592.5000
      Facsimile: 216.592.5009
      chelsea.mikula@tuckerellis.com
      elisabeth.arko@tuckerellis.com
      joseph.manno@tuckerellis.com
      spencer.krebs@tuckerellis.com
      *Attorneys for Defendants Red Roof Inns, Inc.,*
      *Red Roof Franchising, LLC, and RRI West*
      *Management, LLC*

31

## **RULE 7.1D CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D) of the United States District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court was computer-processed, double-spaced between lines, and used Times New Roman font of 14-point size.

Dated: June 25, 2024

*/s/ Marcella C. Ducca*
Marcella C. Ducca

*Attorney for Defendants Red Roof Inns, Inc., Red Roof Franchising, LLC, and RRI West Management, LLC*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on June 25, 2024, a copy of the above was filed with the United States District Court for the Northern District of Georgia and served on counsel of record through the Court's CM/ECF system.

Dated: June 25, 2024

<div style="margin-left:50%">

*/s/ Marcella C. Ducca*
Marcella C. Ducca

*Attorneys for Defendants Red Roof Inns, Inc., Red Roof Franchising, LLC, and RRI West Management, LLC*

</div>